1  Steve Wilson Briggs
2  4322 Chico Ave.,
   Santa Rosa, CA 95407
3  510 200 3763
   snc.steve@gmail.com
4  PLAINTIFF In Propria Persona
5
6
7
8              **UNITED STATES DISTRICT COURT**
9            **NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 10 | Civ No: 18-cv-04952-VC |
| 11  STEVE WILSON BRIGGS, | **PLAINTIFF'S OPPOSITION TO DEFENDANT TRIGGER STREET** |
| 12  Plaintiff, | **PRODUCTIONS INC'S MOTION TO DISMISS** |
| 13  vs | |
| 14  KEVIN SPACEY et al, | Date:         December 06, 2018 |
| 15  Defendants. | Courtroom:  4 |
| 16 | Time:         10:00 a.m. |
| | Judge:        Hon. Vince Chhabria |

17                **PLAINTIFF'S OPPOSITION TO DEFENDANT**
18        **TRIGGER STREET PRODUCTIONS INC'S MOTION TO DISMISS**

19        On August 15, 2018, the Plaintiff submitted a Complaint, comprised of indisputable

20  facts and incontestable exhibits. On October 29, 2018 Defendant (**Def**) Trigger Street

21  Productions Inc (**TSP**) responded with a delinquent Motion to Dismiss and failed to provide

21  a Corporate Disclosure Statement. Rather than making a single meritorious argument, the

22  motion pursues a scattergun strategy—arguing as many bases for dismissal as possible,

23  hoping the Court finds one of the arguments meritorious.  It should be noted that, as the

24  Plaintiff understands the law, several of TSP's arguments do not comply with the bases for a

25  FRCP Rule 12 motion. Nonetheless, the Plaintiff will oppose all of the Def's arguments.

26        11 days after filing their motion to dismiss, TSP submitted a corporate disclosure.

27        This Opposition is based on the Memorandum of Points and Authorities, attached

28  herein, and on the attached "Proposed Order".

                                                i

1

**<u>TABLE OF CONTENTS</u>**

2

3    I. CAPTION PAGE/INTRODUCTION………………………………………  i

4    II. TABLE OF CONTENTS…....…………………………………………..  ii

5    III. TABLE OF AUTHORITIES……………………………………………  iii

6    IV. **MEMORANDUM OF POINTS AND AUTHORITIES**…………………………  1

7        V. LEGAL STANDARD………………….…………………………………  1

8        VI. STATEMENT OF FACTS……………….…………………………………  1

9            Prior <u>Un</u>related Action *Briggs v Blomkamp*……………...……………....  1

10           Prior Related Action, *Briggs v Universal Pictures, et al*…………………....  1

11           Current Action……………….………………………………………....  2

12       VII. **PLAINTIFF'S OPPOSITION RESPONSE**………..…………………  4

13           A.  Opposition to Argument "A" of TSP's motion to dismiss,

14               that "Each and Every Claim for Relief Is Time Barred"………………  4

15           B.  Opposition to Argument "B" of TSP's motion to dismiss:

16               that "The Doctrine of Collateral Estoppel Bars Each

17               and Every Claim For Relief"………………………………………  9

18           C.  Opposition to Argument "C" of TSP's motion to dismiss:

19               That "Briggs Failed to Properly Plead His Fraud Claims**"**……………  11

20           D.  Opposition to Argument "D" of TSP's motion to dismiss:

21               that "The Negligence Claims Fail to Allege a Valid Duty"

21               The Plaintiff did not fail to allege a valid duty…………………………  14

22           E.  Opposition to Argument "E" of TSP's motion to dismiss:

23               that "Briggs Failed to Properly Plead His Infringement Claims"…………  16

24           F.  Opposition to Argument "F" of TSP's motion to dismiss:

25               that  "Spoliation of Evidence Is Not a Valid Cause of Action"………………  17

26           G.   Opposition to Argument "G" of TSP's motion to dismiss:

27               that "Civil Conspiracy Is Not an Independent Cause of Action"…………  17

28                                      ii

H.  Opposition to Argument "H" of TSP's motion to dismiss:

that "Briggs Cannot Cure His Complaint's Defects"................................  18

VIII. IN Objective Analysis………………………………………...…………………  19

IV. CONCLUSION…………………………………………………………....  20

### TABLE OF AUTHORITIES

**CASES**

Angeles Chem. Co. v. Spencer & Jones (1996)
44 Cal.App.4th 112, 119 [51 Cal.Rptr.2d 594]...............................................5

*Ashe v. Swenson* 397 U.S. 436 (1970)...................................................................9

*Benton v. Maryland* 395 U.S. 784…………………………………………… 9

*Boschma v. Home Loan Center, Inc.* (2011) 198 Cal.App.4th 230, 248…………………......13

*Briggs v Blomkamp*………………………………………………....…1, 2, 9, 10, 14, 16

*Briggs v Space*y et al, 18-cv-04952-VC……………………………………....1, 10

*Briggs v Universal*…………………………………………………………..…1, 3

*Burns v. Neiman Marcus Group, Inc.* (2009)
173 Cal.App.4th 479, 488, fn. 8 [93 Cal.Rptr.3d 130]......................................15

*Cabral v. Ralphs Grocery Co.*, 51 Cal. 4th 764 (Cal. 2011)...............................16

*Cook, Perkiss & Liehe v. N. Cal. Collection Serv.,* 911 F.2d 242, 247 (9th Cir. 1990)...........1

Fuller v. First Franklin Financial Corp. (2013)
216 Cal.App.4th 955, 962 [163 Cal.Rptr.3d 44].............................................6

*Glue-Fold, Inc.*, supra, 82 Cal.App.4th at p. 1029……………………………….7

*Gryczman v. 4550 Pico Partners, Ltd.* (2003) ……………………………………5

*Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1110………………………………4

*Knievel v. ESPN*, 393 F.3d 1068, 1080 (9th Cir. 2005)...............................................1

*Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008)..............1

*Mosier v. Southern California Physicians Ins. Exchange* (1995)
 63 Cal.App.4th 1022, 1045)........................................................................13

*NBCUniversal Media, LLC v. Superior Court* (2014) 225
Cal.App.4th 1222, 1232 [171 Cal.Rptr.3d 1].............................................8

iii

*Norgart v. Upjohn Co.* (1999) 21 Cal.4th……………………………………………....7

*Okun v. Superior Court* (1981)
29 Cal.3d 442,454 [175 Cal.Rptr. 157, 629 P.2d 1369……………………………...…..18

*Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 705–06 (9th Cir. 2004)....................8

*Roley v. New World Pictures, Ltd.*, 19 F.3d 479, 481 (9th Cir. 1994)....................................8

*Snow v. A.H. Robins Co.* (1985)...............................................................................7

*Stansfield v. Starkey* (1990) 220 Cal. App. 3d 59, 72-73………………………………11

*Tarmann v. State Farm Mutual Automobile Insurance Co.* (1991)
2 Cal.App.4th 153, 157……………………………………………………………….....14

*Wood v. Santa Barbara Chambers of Commerce, Inc.*,
507 F.Supp. 1128, 1135 (D.Nev.1980)........................................................................8

**STATUTES:**

Federal Rules of Civil Procedure (FRCP)

    Rule 12……………………………………………………….…i, 1, 16

    17 U.S.C. § 501……………………………………………………….....17

California Code of Civil Procedure (CCP)

    § 338(d)...............................................................................6

    § 1709……………………………………………………………..12, 13

    § 1710……………………………………………………………..12, 13

    § 1714(a)...............................................................................15

**OTHER SOURCES AND AUTHORITIES:**

Judicial Council of California Civil Jury Instructions (CACI) (2017 edition).......................5

    No. 204……………………………………………………………16

    No. 400……………………………………………………………15

    No. 455……………………………………………………………..7

    No 1901……………………………………………………….....14

    No. 1925……………………………………………………………6

    No. 3600……………………………………………………….....17

Cornell Law's Wex Legal Dictionary……………………………………………......... 9

iv

PLAINTIFF'S OPPOSITION TO DEF TRIGGER STREET'S MOTION TO DISMISS

## MEMORANDUM OF POINTS AND AUTHORITIES

### LEGAL STANDARD

DISMISSAL

- The FRCP 12(b)(6) instructs the court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co*., 519 F.3d 1025, 1031 (9th Cir. 2008).
- The court must: "read the complaint generously and draw all reasonable inferences in favor of the plaintiff." *Knievel v. ESPN*, 393 F.3d 1068, 1080 (9th Cir. 2005).
- If motion to dismiss is granted, a court should grant leave to amend unless it determines the pleading could not possibly be cured by allegations of other facts. *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.,* 911 F.2d 242, 247 (9th Cir. 1990).

### STATEMENT OF FACTS

This matter is connected to the Prior Action *Briggs v Blomkamp*, et al, CV134679-PJH.

#### Prior Unrelated Action *Briggs v Blomkamp*:

- The Complaint explained that in May of 2013, the Plaintiff walked into a movie theater and saw a trailer of a soon-to-be-released film that looked almost identical to the Plaintiff's screenplay.
- Plaintiff sued for one (1) Cause of Action: Copyright Infringement.
- The Plaintiff lost on summary judgment.
- The Ninth Circuit Court of Appeals affirmed the District Court decision in an unpublished ruling.
- Plaintiff petitioned for a Writ of Certiorari to the U.S. Supreme Court. The Court denied the Plaintiff's petition.

#### Prior Related Action, *Briggs v Universal Pictures, et al*:

- On November 13, 2017 the Plaintiff filed a suit which was very similar to the current action (essentially the same causes). This suit was dismissed without prejudice, due to the Plaintiff's failure to properly serve Defs Spacey and Brunetti.

PLAINTIFF'S OPPOSITION TO DEF TRIGGER STREET'S MOTION TO DISMISS

**Current Action**

2      On August 15, 2018, the Plaintiff re-wrote his Complaint and re-filed this lawsuit with the United States District Court of the Northern District of California. Some of the more important case facts are as follows:

- In late February, 2016, 15 months after the Prior Action went to appeals, the Plaintiff found a BBC article in which Kevin Spacey stated at a convention in Barcelona, Spain, that TriggerStreet.com had "over 400,000 members around the world."

- The time frame that the Plaintiff discovered Spacey's statement is incontestable, because Plaintiff immediately filed an "**Errata**" with the Ninth Circuit Court of Appeals February 29, 2016 (re Briggs v Blomkamp). Plaintiff filed this Errata, because in the Plaintiff's Appellate Brief the Plaintiff stated that at the time that the Defendants accessed his screenplay (2007), TS had only 100,000 members. The new figure of 400,000 dramatically enhanced Plaintiff's widespread dissemination claim.

- Although the Plaintiff was happy to have proof of TS's true membership size to report to the Appellate Court, the Plaintiff was distraught to learn that Spacey had gone to Spain to recruit members (and to admit that TS had member "around the world"). The Plaintiff was distraught because:

  a. TS's Terms of Use contract stated that TS was solely for use in the USA.
  b. The Plaintiff would have never placed his screenplay on a website intended for use around the world, particularly because it is nigh impossible for common American copyright holders to protect and enforce their copyrights overseas.

- The Plaintiff then went back to the TS website (where he had been a member since 2006). The Plaintiff discovered (approximately early March of 2016) that TS closed almost a year and a half earlier, **only 6 days after** the Plaintiff filed Notice of Appeal to the Ninth Circuit.

- Upon discovering that TS closed 6 days after the Plaintiff filed Notice of Appeal, the Plaintiff became suspicious that Spacey, Brunetti and other then unidentified actors had been complicit in the access and infringement of the Plaintiff's work, as well as

PLAINTIFF'S OPPOSITION TO DEF TRIGGER STREET'S MOTION TO DISMISS

complicit in suppressing and destroying evidence snd providing false testimony to the Court, etc.

- As the Plaintiff continued to review the various contract pages he found other instances of fraud and deceit; furthering the Fraud cause, and establishing other causes, such as Deceit.

- Although the Plaintiff was certain of Spacey's and Brunetti's Breach and Fraud by March of 2016, the Plaintiff was not certain of a larger conspiracy, or of a proveable negligent culture—until January or February of 2017, when the Plaintiff discovered that in 2016, Jeff Rovin, the man the Defendants hired as their "expert" witness in Brigg v Blomkamp, went on national TV (FOX News' Sean Hannity Show) to tell the world that he (Rovin) worked for years for President Bill Clinton's administration as a "fixer" (someone paid to write false "smear" stories for tabloid news outlets about Clinton critics).  The Plaintiff then realized that the Defendants had hired Rovin to "fix" (falsify) his report to the Court, to help the Defendants prevail in *Briggs v Blomkamp*.

- Upon discovering this catalytic fact (juxtaposed against the new facts that Spacey and Brunetti had deceived all American TS users and travelled abroad to recruit members, and the fact that the TS social network was destroyed 6 days after the Plaintiff filed Notice of Appeal) the Plaintiff was certain the Defendants had acted, in conspiracy, to commit engage in the causes of action of Breach, Negligence, Willful Suppression (and Spoliation) of Evidence. The Plaintiff resolved to take legal action (this was about March of 2017).

- The Plaintiff then began to write and research for his Complaint, which was filed November, 2017.

- Shortly after initiating the *Briggs v Universal* lawsuit (2017), Plaintiff realized that Spacey and Brunetti's efforts to make TS available in foreign markets and recruit new members around the world, and made the Plaintiff's work available around the world —without the Plaintiff's consent— was a new violation of the Plaintiff's exclusive copyright to distribute his work.

PLAINTIFF'S OPPOSITION TO DEF TRIGGER STREET'S MOTION TO DISMISS

**PLAINTIFF'S OPPOSITION RESPONSE**

To Trigger Street Productions Inc' Motion To Dismiss:

Opposition to Argument "A" of TSP's motion to dismiss:

**A.** Defendant Trigger Street Productions argues that "Each and Every Claim for Relief Is Time Barred"

None of the Plaintiff's claims for relief are time barred, and ALL are protected by:

1. Specific rulings and codes for each cause of action providing that accrual begins when the plaintiff learns of the infraction;

2. the **Delayed Discovery Rule**;

> "Under the [delayed] discovery rule, the statute of limitations begins to run when the plaintiff suspects or should suspect that [his or] her injury was caused by wrongdoing, that someone has done something wrong to [him or] her" (*Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1110).

3. "Fraudulent concealment" tolling rules.

The Plaintiff's Complaints features five types of causes of action: 1. Breach of Contract; 2. Fraud; 3. Negligence; 4. Copyright Infringement; 5. The Doctrinal (Conspiracy and Suppression/Spoliation, whic are not independent causes).

Before explaining why each of these causes of action is not, and cannot be, time barred, cartain facts should be reviewed.

1. The Plaintiff learned of Kevin Spacey traveling to Barcelona, Spain, to boast of TriggerStreet.com's "400,000 members around the world," **in late February of 2016.** This fact is known to the Court because on February 29, 2018, the Plaintiff filed an "Errata" to the Ninth Circuit Court of Appeals to inform them that TS had over 400,000 members in 2009. This information fortified the Plaintiff's argument for *widespread dissemination*, as the Plaintiff's appellate brief stated there were only 100,000 members (from a 2004 TIME magazine article).

2. Between February and March of 2016, the Plaintiff learned that the Defendants closed and destroyed TriggerStreet.com (back in November of 2014).

3. Late February of 2017, the Plaintiff learned that Jeff Rovin (the Defendants' expert

PLAINTIFF'S OPPOSITION TO DEF TRIGGER STREET'S MOTION TO DISMISS

1    witness in Briggs v Blomkamp) went on FOX News' *Sean Hannity Show* (October

2    24, 2016) to admit he (Rovin) was a professional *fixer* for President Clinton. This

3    became the final, and catalytic event that caused the Plaintiff to bring this action.

4    4.   Virtually ALL other factual discoveries (except those events occurring during Briggs

5         v Blomkamp) were discovered in or after March of 2017.

6    5.   The Plaintiff filed the Briggs v Universal Complaint on November 13, 2017.

7

8                      **The Breach Of Contract Claim Is Not Time Barred**

9         The Plaintiff learned of the Defendants' Breaches of Contract in February of 2016.

10        Breach of Contract has a four year statute of limitations in California. Therefore, the

11   Plaintiff has until February of 2020 to file suit.

12        Additionally, Breach of Contract is protected by the Delayed Discovery Rule, thus

13   time does not accrue until the Plaintiff learns of the Breach.

14        The Defense Counsel, as if to deliberately mislead the Court, argues that time

15   accrual begins when Spacey went to Barcelona to recruit new TS members, in 2009, or

16   when TS last operated, in 2014.

17        But, in fact, the **Judicial Council of California Civil Jury Instructions** (2017

18   edition) provides the following two legal citations, which establish that time accrual on

19   Breach of Contract claims are delayed until the Plaintiff learns of the breach:

20   21   • "The claim accrues **when the plaintiff discovers**, or could have discovered
          through reasonable diligence, the injury and its cause." (Angeles Chem. Co. v.
          Spencer & Jones (1996) 44 Cal.App.4th 112, 119 [51 Cal.Rptr.2d 594].)

21

22   • "[T]he **discovery rule** may be applied to breaches [of contract] which can
23   be, and are, committed in secret and, moreover, where the harm flowing from
     those breaches will not be reasonably discoverable by plaintiffs until a future
24   time."(Gryczman v. 4550 Pico Partners, Ltd. (2003) 107 Cal.App.4th 1, 4–5
     [1311530079 Cal.Rptr.2d 680].)

25

26        No reasonable person could have guessed that the Defendants (Spacey, Brunetti,

27   TriggerStreet) were engaged in routine breaches of contract. Otherwise, dozens, hundreds,

28   or thousands of their TS members would have withdrawn their screenplays or filed suit.

Additionally, the Breach of Contract claims are protected by delayed accrual because of the *fraudulent concealment*, and *fraudulent deceit* causes of action present in this case.

## The Fraud Claims Are Not Barred

The Plaintiff learned of the Defendants' various fraudulent actions, between February of 2016, and October 2017.

Fraud has a three year statute of limitations in California.

Therefore, the Plaintiff has until between February of 2019 and October of 2020 to file suit against the Defendants.

The Defense Counsel, again, seems intent to misinform the Court as to the rules of statute of limitations and time accrual related to fraud, contending that time accrues from the first or last fraudulent event.

That is not the case.

California Code of Civil Procedure § 338(d) states:

> 338. Within three years:
> (d) An action for relief on the ground of fraud or mistake. The cause of action in that case is not deemed to have accrued **until the discovery, by the aggrieved party**, of the facts constituting the fraud or mistake.

But the California rules protecting the rights of the aggrieved go even further in the case of the more egregious types of fraud. If fraudulent concealment is suspected to be at play, as it is in this case, the statute of limitations is tolled, as made clear in several case citations included in the Judicial Council of California Civil Jury Instructions (2017 edition) (CACI No. 1925, Affirmative Defense—Statute of Limitations—Fraud or Mistake):

> • "One [exception to the limitations period] is the doctrine of fraudulent concealment, which tolls the statute of limitations if a defendant's deceptive conduct 'has caused a claim to grow stale.' " (Fuller v. First Franklin Financial Corp. (2013) 216 Cal.App.4th 955, 962 [163 Cal.Rptr.3d 44].)

> • "'Technical rules as to when a cause of action accrues apply therefore only in those cases which are free from fraud committed by the defendant. Said section 338, subdivision 4, . . . recognizes the nonapplicability of those technical rules where the fraud of the defendant may be so concealed that in

the absence of circumstances imposing greater diligence on the plaintiff, the cause of action is deemed not to accrue until the fraud is discovered. Otherwise, in such cases, the defendant by concealing his fraud, would effectively block recovery by the plaintiff because of the intervention of the statute of limitations.' " (Snow v. A.H. Robins Co. (1985) 165 C

From *Snow v Robins*, one might conclude that the elements of Fraudulent Deceit and Fraudulent Concealment, herein, would further, redundantly, cause all claims to toll.

### The Negligence Claims Are Not Time Barred

Virtually all of the Plaintiff's Negligence claims where unearthed between March of 2017 and late November 2017.

The California *negligence* statute of limitations is two years.

Therefore, the Plaintiff has until February and/or November of 2019 to file suit.

In California time does NOT accrue from when the Defendant commits the last negligent act.

Rather, time accrues from when the plaintiff learns of the negligent conduct, confirmed by the following cases taken from the Judicial Council of California Civil Jury Instructions (2017 edition) (CACI No. 455. Statute of Limitations—Delayed Discovery, re Negligence)

"An exception to the general rule for defining the accrual of a cause of action—indeed, the 'most important' one—is the discovery rule. . . . It postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action. (Norgart v. Upjohn Co. (1999) 21 Cal.4th 383, 397–398 [87 Cal.Rptr.2d 453, 981 P.2d 79]

"A limitation period does not begin until a cause of action accrues, i.e., all essential elements are present and a claim becomes legally actionable. Developed to mitigate the harsh results produced by strict definitions of accrual, the common law discovery rule postpones accrual until a plaintiff discovers or has reason to discover the cause of action." (Glue-Fold, Inc., supra, 82 Cal.App.4th at p. 1029, internal citations omitted.)

"A plaintiff's inability to discover a cause of action may occur 'when it is particularly difficult for the plaintiff to observe or understand the breach of duty,

or when the injury itself (or its cause) is hidden or beyond what the ordinary person could be expected to understand.' " (NBCUniversal Media, LLC v. Superior Court (2014) 225 Cal.App.4th 1222, 1232 [171 Cal.Rptr.3d 1].)

**The Copyright Infringement Claims Are Not Time Barred**

As the Court may recall, the Plaintiff realized the Copyright Infringement causes of action in this matter, only after the Plaintiff amended his original complaint (circa December 2017).

Therefore, the Plaintiff has until December 2020 to file suit against the Defendants.

Against the Defense Counsel's insistence otherwise, for Copyright Infringement time accrues when the Plaintiff learns of a violation. [See *Wood v. Santa Barbara Chambers of Commerce, Inc.,* 507 F.Supp. 1128, 1135 (D.Nev.1980), and see *Roley v. New World Pictures, Ltd.*, 19 F.3d 479, 481 (9th Cir. 1994)].

Further, in *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 705–06 (9th Cir. 2004), the Court ruled that not only is time accrued from when Plaintiff's discover the infringement, but Plaintiff's can also recover damages that happen outside of the three year window.

**The Conspiracy & Suppression/Spoliation Claims Are Not Time Barred**

Conspiracy and Suppression of Evidence and/or Spoliation are not independent causes of action in California. Rather, they are actionable doctrines; one, Conspiracy, imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration; the other, Suppression/Spoliation, imposes liability on persons who assist in destroying evidence in furtherance of another civil infraction or tort.

In California, like the federal courts, time accrues from the last known act of the Conspiracy. The time limit is determined by the associated cause of action.

In this matter, currently, the last known act in the Defendants' conspiracy was the closing and destroying of the TS social network, in November of 2014. This was done to abet and conceal one or more breaches of contract.

1    Therefore, the statute of limitations for the Plaintiff to take action on this conspiracy

2    would have expired in November 2018. The Plaintiff filed suit in August, 2018, several

3    months before the deadline.

4

5                    **Opposition to Argument "B"** of TSP's motion to dismiss:

6    **B.** The Defendant Falsely claims **"The Doctrine of Collateral Estoppel Bars Each**

7          **and Every Claim For Relief"**

8    The Defense Counsel has seemingly wasted the Court's time to advances a hollow

9    argument that the Plaintiff's FAC is barred by the "*Collateral Estoppel"*—which is false, on

10   its face, as none of this matter's causes of action were either addressed or resolved in the

11   Prior Action's (*Briggs v Blomkamp*) judgment.

12   Cornell Law's Wex Legal Dictionary defines *Collateral Estoppel* as follows:

13

14         The doctrine of collateral estoppel, a common law legacy codified by
       Ashe v. Swenson 397 U.S. 436 (1970), **protects** criminal **defendants from**
15     **being tried for the same issue in more than one** criminal **trial**. In Ashe v.
       Swenson, the Court ruled that the aegis of the Fifth Amendment's
16     protections against double jeopardy are enforceable in state as well as
       federal court through the Due Process Clause of the Fourteenth
17     Amendment as established by Benton v. Maryland 395 U.S. 784. This
18     decision relies on the application of the Full Faith and Credit Clause of the
19     Constitution.
20         As a subgenre of res judicata, **collateral estoppel prevents**
21     **subsequent litigation of legal determinations of fact and law that have**
       **resulted in valid final judgments**. All litigants have a "full and fair"
21     opportunity to bring suit except where one party has brought effectively the
22     same suit as defined by the same substantive legal issue in another venue or
23     at another time against the same defendant.

24   The argument is clearly inapplicable as none of the causes for action in this matter

25   were addressed in the Prior Action, Briggs v Blomkamp, and both matters rely on separate

26   facts and allegations, and ten (10) of the 13 parties in this action are entirely new.

27         The charts on the following page are intended to help illustrate the vast differences

28   between the two cases.

PLAINTIFF'S OPPOSITION TO DEF TRIGGER STREET'S MOTION TO DISMISS

| BRIGGS v BLOMKAMP | BRIGGS v SPACEY |
|---|---|
| **DEFENDANTS:** | **DEFENDANTS:** |
| **Neill Blomkamp**<br>**MRC**<br>**Sony Pictures Ent.**<br>TriStar<br>QED International | **Neill Blomkamp**  Mordecai Wiczyk<br>**MRC**  NBCUniversal<br>**Sony Pictures Ent.**  Ben Affleck<br>Kevin Spacey  Bill Block<br>Ari Emanuel  Asif Satchu<br>Matt Damon  Dana Brunetti |
| CAUSES OF ACTION:<br><br>1.  Copyright Infringement | CAUSES OF ACTION:<br>1.  Civil Conspiracy<br>2.  Breach Of Contract<br>3.  Fraud<br>4.  Fraudulent Deceit<br>5.  Fraudulent Concealment<br>6.  Negligence<br>7.  Gross Negligence<br>8.  Willful Suppression/Spoliation<br>9.  Infringing Exportation<br>10. Copyright Infringement<br>11. An Accounting |

Examining the most basic case facts confirms that no relationship exists between the two cases —expect for the mention, in *Briggs v Spacey*, of unlawful conduct that the Defendants engaged in during *Briggs v Blomkamp* (e.g., the Defendants' expert submitted a falsified expert report, then two years later boasted that he was/is a professional fixer), to secure a favorable judgment.

The only causes of action that even share a name are the copyright infringement cause(s). But examining these causes, one sees that these causes are wholly unrelated.

| ANALYSIS OF COPYRIGHT CLAIMS IN BRIGGS V BLOMKAMP: | ANALYSIS OF COPYRIGHT CLAIMS IN BRIGGS V SPACEY: |
|---|---|
| Plaintiff claimed **Neill Blomkamp** accessed and misappropriated his screenplay on TriggerStreet.com; then used the misappropriated work to make the film "Elysium." | Plaintiff claims **Kevin Spacey** and **Dana Brunetti,** without Plaintiff's consent, used the TS social network to market the Plaintiff's screenplay around the world, in violation of copyright law. |

1    Since none of the causes of action, issues, allegations and facts of his matter (Briggs

2  v Spacey et al) were addressed in Briggs v Blomkamp, and since none of them have ever

3  been brought to a valid final judgment, clearly then, none of the causes of action in Briggs v

4  Spacey et al are barred by collateral estoppel.

5

6    **Opposition to Argument "C"** of TSP's motion to dismiss:

7  **C.** The Defendant Falsely claims "Briggs Failed to Properly Plead His Fraud Claims**"**

8    The Plaintiff has properly pleaded his fraud claims.

9    *Stansfield v. Starkey* (1990) 220 Cal. App. 3d 59, 72-73, establishes that **Fraud**

10  (Intentional Misrepresentations) pleadings consist of five (5) elements:

11    1.  a representation, usually of fact, which is false;

12    2.  knowledge of its falsity;

13    3.  intent to defraud;

14    4.  justifiable reliance upon the misrepresentation;

15    5.  damage resulting from that justifiable reliance.

16    <u>All of these elements are present in the Plaintiff's pleading for Fraud</u>, as seen on

17  page 48 of the Complaint, beginning on paragraph 219, under the heading "**Third Claim**

18  **For Relief Fraud / Intentional Misrepresentations**":

19    "219. The Defendants made numerous false representations, as true; such as:

20    a.  The Defendants falsely claimed TS was solely for use in the USA;
      b.  The Defendants falsely claimed that TS employed "industry standard"

21      security.
      c.  The Defendants falsely claimed that TS "encapsulates every aspect of the

21      user's desires and needs."

22    d.  The TS "Security" page falsely stated: " When you submit information via
        the Site, your information is protected using secure data networks protected

23      by industry standard firewall and password protection systems. Our
        security practices and policies are periodically reviewed and updated as

24      necessary, and only authorized individuals have access to the information

25      provided by our users."

26    e.  The Defendants knowingly hired a "fixer," and knowingly submitted said
        fixer's falsified expert report to the District Court.

27    220. The Defendants knew these claims were false.

28    221. The Defendants intended for the Plaintiff to rely on these

misrepresentations.

222. The Plaintiff relied on the Defendants' claims.

223. The District Court relied on the false claims of the Defendants' expert.

224. The Plaintiff was injured as as a direct, foreseeable and proximate consequence of the Defendants' fraud and misrepresentations…"

The pleading standards for **Fraudulent Deceit** are the same as standard Fraud:

1. a representation, usually of fact, which is false;

2. knowledge of its falsity;

3. intent to defraud;

4. justifiable reliance upon the misrepresentation;

5. damage resulting from that justifiable reliance.

<u>All of these elements are present in the Plaintiff's pleading of Fraudulent Deceitt</u>, as seen on page 49, beginning on paragraph 226, under the heading "**Fourth Claim For Relief Fraudulent Deceit**":

"226. The Defendants committed fraudulent deceit as defined under California Civ. Code §§ 1709 & 1710.

227. The Defendants' acts of deceit include, but are not limited to, such actions as:

   a. The Defendant encouraged/intimidated TS members into using false identities;

   b. The Defendants falsely claimed TS was solely for use in the USA, but then made TS available around the world, and Defs Spacey went to various foreign countries to recruit new members;

   c. The Defendants failed to disclose that the Defendants implemented counter security features on the TS social network, whereby all of a member's script's access history was erased when that member removed his/her script from the TS social network.

   d. The Defendants falsely claimed that TS employed "industry standard" security.

   e. The Defendants knowingly hired a fixer , and knowingly submitted said fixer's falsified expert report to the District Court.

   f. The Defendants' employee or agent, Simon Kinberg, stated under oath that he only polished Defendant Blomkamp's screenplay. But the record and evidence proves Kinberg did much more than polish Blomkamp's script and film.

228. The Defendants knew these claims were false—or knew that withholding the truth was unlawful, a breach of trust, a breach of obligation, and/or unethical.

229. The Defendants made these false statements and omissions to deceive the Plaintiff, with the intent that the Plaintiff rely on the misrepresentations and omissions as true.

230. The Plaintiff reasonably relied on the Defendants' representations, as true.

231. The Plaintiff was injured as as a direct, foreseeable and proximate consequence of the Defendants' fraudulent deceit, including, but not limited to, such injuries as…"

The pleading requirements for **Concealment Fraud** in California are slightly different, established by such cases as *Boschma v. Home Loan Center, Inc.* (2011) 198 Cal.App.4th 230, 248; and *Mosier v. Southern California Physicians Ins. Exchange* (1995) 63 Cal.App.4th 1022, 1045) Concealment Fraud requires that each of the following elements be proved:

1. Defendant must have concealed or suppressed a material fact,

2. Defendant must have been under a duty to disclose the fact to the plaintiff;

3. Defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff;

4. Plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact;

5. Plaintiff must have sustained damage as a result of the concealment"

<u>All of these elements are present in the Plaintiff's pleading of Fraudulent Concealment</u>, as seen on page 50, beginning on paragraph 233, under the heading "**Fifth Claim For Relief Fraudulent Concealment**":

"233. The Defendants engaged in concealment as defined by California Civ. Code §§ 1709 & 1710, and as contemplated in California Civil Jury Instructions § 1901.

234. The Defendants willful and deliberate acts of concealment include, but are not limited to, such acts as:

a. The Defendants closed TS without sending a customary email notification to TS members (as the Defs did not want the Plaintiff to be aware of the closure).

b. To prevent Plaintiff from discovering the Defendant's misappropriations of his screenplay, the Defendants took the extraordinary step of refusing to allow Elysium actors to take the Elysium script home.

c. The Defendants did not inform TS members that Def Spacey (and/or Def Brunetti) went to various foreign countries to recruit new TS members.

d. The Defendants failed to disclose that the Defendants implemented counter security features on the TS social network, whereby all of a member's script's access history was erased when that member removed his/her script from the TS social network.

e. In Briggs v Blomkamp , the Defendants would not permit their employee/agent, Lee Smith, to answer a central discovery interrogatory.

235. The Plaintiff was injured as as a direct, foreseeable and proximate consequence of the Defendants' fraudulent concealment, including, but not limited to, such injuries as…"

<u>Particularity</u>

In addition to the elements required to plead Fraud, California also requires that the facts constituting each element be alleged with particularity.  In addition, fraud pleadings against a corporation must allege such facts as the names of the persons who made the misrepresentations, to whom they spoke, what they said, and when it was said or written. (Tarmann v. State Farm Mutual Automobile Insurance Co. (1991) 2 Cal.App.4th 153, 157.).

The Plaintiff's Complaint meets this demand as it identifies the actions that each key Defendant take with respect to Fraud (e.g., Spacey and Brunetti made certain representations to TS member, then went to Barcelona and said and did the opposite).

All of the Defendants' conduct is  fully outlined in the body of the Complaint. For instance, forming the basis of the breach cause and portions of the fraud cause, the Plaintiff explained in the body of the Complaint that Spacey and Brunetti were the executives and creators of TS; thus they knew the Terms of Use page informed US users that TS was solely for use in the USA; thus, when they travelled to Spain and London to recruit members they understood they were engaged in breach and fraud. However, in respect for the Court's time, in the Complaint's "Claims For Relief" section, the Plaintiff simply re-alleged all of the preceding paragraphs, incorporating them by reference, to comply with the "particularity" requirement, without having to rewrite the entire Complaint under each claim for relief.

**Opposition to Argument "D"** of TSP's motion to dismiss:

**D.** The Defendant Falsely claims "The Negligence Claims Fail to Allege a Valid Duty"

The Plaintiff did not fail to allege a valid duty.

As the Plaintiff understands the law, there is no such requirement to allege a valid

1  duty in a Negligence tort.  The Judicial Council of California Civil Jury Instructions (2017

2  edition) CACI No. 400. provides the following elements of a **negligence** claim:

3  > [Name of plaintiff] claims that [he/she] was harmed by [name of
4  > defendant]'s negligence. To establish this claim, [name of plaintiff] must
   > prove all of the following:
5  > 1. That [name of defendant] was negligent;
6  > 2. That [name of plaintiff] was harmed; and
7  > 3. That [name of defendant]'s negligence was a substantial factor in
   >    causing [name of plaintiff]'s harm.
8

9  California Code of Civil Procedure 1714(a) (which is the foundation of any

10  California negligence action) states:

11  > "**Everyone is responsible**, not only for the result of his or her willful acts,
12  > but also for an injury occasioned to another by his or her want of ordinary
    > care or skill in the management of his or her property or person, except so far
13  > as the latter has, willfully or by want of ordinary care, brought the injury
    > upon himself or herself."
14

15  From this comes the concept that we all have a duty to employ ordinary care.

16  However, this is not for the Plaintiff to posit. Rather, from the facts and allegations, it is for

17  the Court to determine. The The Judicial Council of California Civil Jury Instructions (2017

18  edition) CACI No. 400 (Negligence) "Sources and Authority" section explains:

19  > "[T]he concept of foreseeability of risk of harm in determining whether a
20  > duty should be imposed is to be distinguished from the concept of "
    > 'foreseeability" in two more focused, fact-specific settings' to be resolved by
21  > a trier of fact. 'First, the [trier of fact] may consider the likelihood or
    > foreseeability of injury in determining whether, in fact, the particular
21  > defendant's conduct was negligent in the first place. Second, foreseeability
22  > may be relevant to the [trier of fact's] determination of whether the
    > defendant's negligence was a proximate or legal cause of the plaintiff's
23  > injury.' " (Burns v. Neiman Marcus Group, Inc. (2009) 173 Cal.App.4th 479,
24  > 488, fn. 8 [93 Cal.Rptr.3d 130], internal citation omitted.)

25  And…

26  > While the court deciding duty assesses the foreseeability of injury from 'the
27  > category of negligent conduct at issue,' if the defendant did owe the plaintiff
    > a duty of ordinary care the jury 'may consider the likelihood or foreseeability
28  > of injury in determining whether, in fact, the particular defendant's conduct

1  was negligent in the first place.' (Cabral *v.* Ralphs Grocery Co., 51 Cal. 4th
2  764 (Cal. 2011)

3  **Opposition to Argument "E"** of TSP's motion to dismiss:

4  **E.**  The Defendant Falsely claims "Briggs Failed to Properly Plead His Infringement
5  Claims"

6  **The American Bar Association** lays out the necessary elements for an infringement
7  suit, in their article "An Overview of the Elements of a Copyright Infringement Cause of
8  Action - Part I: Introduction and Copying." Author Jason E. Sloan explains:

9  An action for copyright infringement may arise where a third party
10  violates one or more of the exclusive rights granted to copyright owners.  To
   establish infringement, the plaintiff must prove:  "**(1)** ownership of a valid
11  copyright, and **(2)** copying of constituent elements of the work that are
   original."[1]
12  Ownership of a valid copyright consists of:  "**(1)** originality in the
13  author; **(2)** copyrightability of the subject matter; **(3)** a national point of
   attachment of the work, such as to permit a claim of copyright; **(4)**
14  compliance with applicable statutory formalities; and **(5)** (if the plaintiff is
   not the author) a transfer of rights or other relationship between the author
15  and the plaintiff so as to constitute the plaintiff as the valid copyright
16  claimant."[2]  **A copyright registration certificate from the Copyright
   Office serves as prima facie evidence of elements (1) through (4)**.  If the
17  defendant rebuts the plaintiff's prima facie evidence, then the above elements
18  of valid copyright ownership become essential to the plaintiff's case.

19

20  The Plaintiff possesses a valid copyright registration for his work in question; thus,
21  he has met ALL of the requirements outlined in paragraph two.  The Plaintiff believes the
21  Court is aware that the Plaintiff possesses a valid copyright registration for his screenplay
22  *Butterfly Driver*, as it is part of the public record, as it was required to file the *Briggs v*
23  *Blomkamp* lawsuit (and attached as an exhibit to the complaint). The Defendant has also
24  attached the Briggs v Blomkamp complaint to their motion, and asked for Judicial Notice.

25  In drafting the infringement claims in this current action, the Plaintiff explained the
26  necessary facts in the body of the Complaint, and re-alleged and incorporated them by
27  reference into his infringement claims (See Complaint, pp 55-57). Thus, the Plaintiff
28  believes he has properly pleaded his infringement claims, the details of which are

16

1    exceedingly simple: Plaintiff placed his screenplay on a social network claiming to be solely

2    for use in the USA, but secretly the Defendants displayed the network (and the Plaintiff's

3    work) around the world. This was Infringing Exportation, a violation of the Plaintiff's

4    exclusive right to distribute his work, enforceable under FRCP 17 U.S.C. § 501.

5        If the Court requires a more detailed infringement pleading (à la Briggs v

6    Blomkamp) with the registration attached, the Plaintiff will seek leave to amend (hopeful

7    that the Court will permit the Plaintiff to postpone amending until all of the Defendants'

8    motions to dismiss are heard, to circumvent the need to seek further leave to amend).

9

10        **Opposition to Argument "F"** of TSP's motion to dismiss:

11       **F.**   The Defendant claims "Spoliation of Evidence Is Not a Valid Cause of Action"

12       Willful Suppression of Evidence and Spoliation are longer independent torts in

13   California. However, Willful Suppression of Evidence (and spoliation) is an actionable civil

14   infraction if it is done in furtherance of or the commission of an independent cause of

15   action. Therefore, as the Complaint explains on page 54, paragraph 246, under the heading

16   "**Eighth Claim For Relief Willful Suppression Of Evidence / Spoliation Of Evidence**,"

17   California has codified its Civil Jury Instructions Plaintiff to address this infraction:

18       246. **California Civil Jury Instructions (CACI) (2017) 204** makes willful
19       suppression of evidence unlawful; stating: "You may consider whether one
         party intentionally concealed or destroyed evidence. If you decide that a party
20       did so, you may decide that the evidence would have been unfavorable to that
         party."
21

21       Additionally, the Defendants argument is not a basis for a Rule 12 motion.

22

23        **Opposition to Argument "G"** of TSP's motion to dismiss:

24       **G.**  The Defendant Needlessly claim "Civil Conspiracy Is Not an Independent Cause of

25        Action"

26       The Plaintiff, like the Court, understands that Conspiracy is not an independent

27   cause of action. **California Civil Jury Instructions (CACI) (2017) 3600** provides juries

28   detailed guidelines to identify civil conspiracies. But more importantly, CACI 3600 *Sources*

1  *and Authority* section also explains how and when a Plaintiff's complaint may include a

2  cause of action for Conspiracy:

3  > "A complaint for civil conspiracy states a cause of action only when it alleges
4  > the commission of a civil wrong that causes damage. Though conspiracy may
   > render additional parties liable for the wrong, the conspiracy itself is not
5  > actionable without a wrong." (Okun v. Superior Court (1981) 29 Cal.3d 442,
6  > 454 [175 Cal.Rptr. 157, 629 P.2d 1369].)

7  The Complaint's "Claims For Relief" section has dedicated a lengthy section (page

8  41 to 46) to cover the Conspiracy claims, and explain the five (5) separate conspiracies

9  committed by the Defendants.

10  The first conspiracy was to commit fraud.

11  The second conspiracy was to commit fraudulent concealment.

12  The third conspiracy was to commit Willful Suppression of Evidence.

13  The fourth conspiracy was to make Intentional Misrepresentations to the Court and

14  to Plaintiff, and to commit spoliation of evidence.

15  The fifth conspiracy was to engage in negligent enterprises.

16  The Complaint's *Conspiracy* section details the actors and their actions in each of

17  the five conspiracies. Although the Complaint does not specifically say "Conspiracy #1 was

18  executed to commit fraud," and so on, for each of the five conspiracies, if adding these

19  statements is helpful to the Court, the Plaintiff will amend.

20  Additionally, the Defendant's argument does not appear to be a Rule 12 motion basis.

21

21  **Opposition to Argument "H"** of TSP's motion to dismiss:

22  **H.** The Defendant claims "Briggs Cannot Cure His Complaint's Defects"

23  Should the Court find that any of the Defendant's arguments are meritorious, the

24  Plaintiff assures the Court he can, and will, cure the problem with leave of the Court to

25  amend.  If such leave is required, again, the Plaintiff hopes the Court will permit the

26  Plaintiff to delay the amending until all of the Defendants' motions to dismiss are heard, to

27  circumvent the possibility that the Plaintiff might seek further leave to amend again.

28

| | |
|---|---|
| 1 | **Objective Analysis** |
| 2 | The Defendant's motion to dismiss, like most motions to dismiss, endeavors to |
| 3 | persuade the Court that the Plaintiff's lawsuit is meritless. |
| 4 | The Plaintiff believes that perhaps the clearest and most conclusive evidence of the |
| 5 | meritoriousness of Plaintiff's lawsuit is what outside experts and attorneys say about the |
| 6 | case, upon thorough and careful consideration. The Plaintiff postulates that the attorneys |
| 7 | and experts that the Court should be most interested in hearing from, regarding this case, are |
| 8 | litigation financier/investors.** |
| 9 | Why? |
| 10 | Litigation financiers are willing to invest millions to finance the legal costs of the |
| 11 | meritorious lawsuits. Litigation financiers are very selective. Most litigation investment (or |
| 12 | financing) firms employ a team of lawyers to analyze the merits of each case they consider. |
| 13 | Typically, a litigation finance company will only finance cases that the analysts give at least |
| 14 | a 60% chance of success; which gives the financiers a substantial 60-40 advantage. |
| 15 | With that explained, 2-3 weeks after Related Case *Briggs v Universal* (2017) was |
| 16 | dismissed, Lee Jesberger, the CEO of *Easy Lawsuit Funds* (a well-known litigation |
| 17 | financing firm) contacted the Plaintiff to inform him that his company was interested in |
| 18 | funding the Plaintiff's action against the Defendants. (**See Exhibit A**). However, it was a bit |
| 19 | too late. (It should be noted Mr Jesberger contacted the Plaintiff several months after the |
| 20 | Plaintiff contacted him.) |
| 21 | But perhaps more telling of the absolute meritoriousness of this action is that a few |
| 21 | months later, without solicitation, on September 13, 2018, Steven Weisman, **LexShares'** |
| 22 | *Origination Analyst*, contacted the Plaintiff to express interest in financing the Plaintiff's |
| 23 | Prior related action, *Briggs v Universal*. (**See Exhibit B.**) (LexShares is one of the most |
| 24 | renowned litigation finance companies in the world). |
| 25 | The Plaintiff posits that these attorneys and investors wouldn't be interested in a |
| 26 | suit if it didn't have absolute merit. |
| 27 | |
| 28 | **The Plaintiff intends to use such a finance company to secure representation shortly after the case enters Discovery. |

PLAINTIFF'S OPPOSITION TO DEF TRIGGER STREET'S MOTION TO DISMISS

1                                 **CONCLUSION**

2        For all of the foregoing reasons, the Plaintiff believes Trigger Street Productions

3 Inc's motion to dismiss should be denied.

4                                 Respectfully submitted,

5

6 Dated: 11/19/2018                Signed: /s/ Steve Wilson Briggs

7                                Steve Wilson Briggs

8                                Plaintiff, In Propria Persona

9

10

11

12

13

14

15

16

17

18

19

20

21

21

22

23

24

25

26

27

28

PLAINTIFF'S OPPOSITION TO DEF TRIGGER STREET'S MOTION TO DISMISS

EXHIBIT

A

 Gmail

**Steve Wilson Briggs <snc.steve@gmail.com>**

---

## Lawsuit Advance ??

---

**Easy Lawsuit Funds** <easylawsuitfunds@gmail.com>                    Tue, May 15, 2018 at 9:34 AM
To: Steve Wilson Briggs <snc.steve@gmail.com>

Hi Steve,

You came to us some time ago, looking for an advance against your lawsuit.  At that time, we were unable to help you, either because the case was too new, or we didn't have funding available for your case type.

As we have added various funding sources since that time, we're wondering if your case has been settled, and if not, are you still interested in pursuing funding.

Please give us a call or email us to advise.

Warmest regards,

Lee


Lee A. Jesberger
Senior Account Executive

***E**asy Lawsuit Funds*

www.easylawsuitfunds.com
Join Us on FB and Twitter
Office:  (856) 340-6133
eFax:  (856) 741-1222

# EXHIBIT

# B

 **Steve Wilson Briggs <snc.steve@gmail.com>**

---

## Steve Kenyatta Wilson Briggs v. Asgari Inc.

**Steven Weisman** <steven.weisman@lexshares.com>                    Thu, Sep 13, 2018 at 7:08 PM
To: snc.steve@gmail.com

Hi Steve,

While I know the above mentioned case is no longer active, it appears to be exceptionally fitting for our funding profile so I'm hoping that it might make sense to discuss other matters or general synergies.

For context, I represent LexShares. We're a unique litigation funder in that we'll finance matters as small as $1M in recovery value. This versatility has made us an unparalleled resource – allowing attorneys to take on cases they might have turned away or been urged to settle at a fraction of fair value.

Is there a good time this week to discuss in a bit more depth? Happy to discuss specific cases or just answer your questions.

Look forward to getting further introduced.

Best,

**Steven Weisman**
Origination Analyst
Lexshares
Direct: (646) 902-5996
Cell: (516) 220-9844
steven.weisman@lexshares.com

Unsubscribe

The information contained in this e-mail and any attached documents are privileged and confidential and for the intended recipient only. This email does not constitute an offer of, or the solicitation of an offer to buy or subscribe for, any securities to any person in any jurisdiction to whom or in which such offer or solicitation is unlawful. Any information contained herein is not sufficient for and should not be used as a basis for making any investment decision; nothing in this email constitutes investment advice. Information about any securities offering should not be considered complete and is qualified in the entirety by the full offering documents corresponding to such financing posted on www.LexShares.com.  The securities offered on www.LexShares.com may be sold only to Accredited Investors.  To the fullest extent permissible by law, neither LexShares, Inc. nor its executives, officer, employees or affiliates make any representation or warranty, express or implied, as to the accuracy, completeness or definitiveness of this information, and nothing contained herein shall be relied upon as a representation as to past or future performance. We are not a registered broker, dealer, investment advisor, investment manager or funding portal and do not undertake any activity which would require such registrations. Securities offered through WealthForge Securities, LLC, Member FINRA/SIPC.

IRS Circular 230 Disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any tax advice contained in this communication (including any attachments) was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding any tax penalty or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

Privileged Information: This message, together with any attachments, is intended only for the use of the individual or entity to which it is addressed and may contain information that is legally privileged, confidential and/or exempt from disclosure. If you are not the intended recipient, you are hereby notified that any use, dissemination, distribution, or copying of this message, or any attachment, is strictly prohibited. If you have received this message in error, please delete this message, along with any attachments, from your computer. Thank you.