1    Steve Wilson Briggs
2    4322 Chico Ave.,
     Santa Rosa, CA 95407
3    510 200 3763
     snc.steve@gmail.com
4    PLAINTIFF In Propria Persona

5

6

7

8               **UNITED STATES DISTRICT COURT**

9             **NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 10   STEVE WILSON BRIGGS, | Civ No: 18-cv-04952-VC |
| 11        Plaintiff, | **PLAINTIFF'S NOTICE OF MOTION** |
| 12         vs | **AND MOTION FOR LEAVE TO FILE** |
|    KEVIN SPACEY; ARI EMANUEL; | **MOTION FOR RECONSIDERATION** |
| 13   MATT DAMON; BEN AFFLECK, et al; | |
| 14        Defendants | Complaint filed August 15, 2018 |

15             **NOTICE OF MOTION AND MOTION**

16        ALL PARTIES AND THEIR ATTORNEYS OF RECORD: YOU ARE HEREBY

17 NOTIFIED THAT the Plaintiff hereby moves this Court for leave to file a **Motion for**

18 **Reconsideration** of this Court's December 22, 2018 Order/Judgment granting the

19 Defendants' motions to dismiss (Dkt # 90 & 91). This motion is based on this Notice and

20 Motion, the subsequent Memorandum of Points and Authorities, and the prospective Motion

21 For Consideration (**attached as Exhibit C**), and the proposed order (attached).

22        This motion is made pursuant to Rule 59(e), invokable in cases like this, when: **1.**

23 necessary to prevent manifest injustice; **2**. necessary to correct manifest errors of law or fact

24 upon which the judgment rests, or; **3.** necessary to present newly discovered evidence. This

25 motion is also made pursuant to Local Rules (**LR**) 7-9(2), which allows such motion with

26 "The emergence of new material facts…"; and pursuant to LR 7-9(b)(3), which permits

27 such motions when there is a "manifest failure by the Court to consider material facts or

28 dispositive legal arguments which were presented to the Court…"

i

1

# TABLE OF CONTENTS

2

3  NOTICE OF MOTION AND MOTION: ……………………………………………… i

4  TABLE OF CONTENTS……………………………………………………………... ii

5  TABLE OF AUTHORITIES ……………………………………………...…… iii

6  MEMORANDUM OF POINTS AND AUTHORITIES: …………………………..... 1

7      I.    Motion Is Necessary To Prevent Manifest Injustice (Arg #1): ……………...…… 1

8      II.   Manifest Failure To Consider Material Facts Or Dispositive:

9            Arguments Which Were Presented To The Court (Arg #2): …………..……... 3

10     III.  The  Motion Is Necessary To Correct Manifest Errors Of Law

11           Or Fact Upon Which The Judgment Rests (Arg #3): …………….…..…… 6

12     IV.  Motion Is Necessary To Prevent Manifest Injustice And Errors

13           Of Law Or Fact Upon Which The Judgment Rests (Arg #4): …………..….. 8

14     V.    Motion Is Necessary To Prevent Manifest Injustice (Arg #5): …..……………. 9

15     VI.   Motion Is Necessary To Prevent Manifest Injustice (Arg #6): ………....……. 10

16     VII.  Motion Is Necessary To Prevent Manifest Injustice (Arg #7): ……………….. 11

17     VIII. Motion Is Necessary To Prevent Manifest Injustice (Arg #8)............................. 13

18     IX.   Motion Is Necessary To Present New Evidence (Arg #9): ………..………….. 14

19     Note: …………………………………………………………………………..... 14

20  CONCLUSION: …………………………………………………….…………..... 14

21

22

23

24

25

26

27

28

ii

1

# TABLE OF AUTHORITIES

2

3  **CASES:**

4  *Briggs v Blomkamp* (2013, US Cert Denied, 2018) …..……………………...…… 8, 10

5  *Briggs v Universal* (2017) …………….……………………..………... 4, 9, 10

6  *Briggs v Spacey* (2018) ……………………………………………….…….. 4, 5, 9

7  *Moore v Lightstorm Ent.*, (2013)................................................................ 13

8

9  **STATUTES:**

10  **Federal Rules of Civil Procedure (FRCP)**

11      FRCP Rule 59(e) …………………………………………………….. i, 1

12      FRCP Rule 60((b)(1)(2) or (3)) …………………………………... i, 1, 9, 13

13      FRCP Rule 6 …………………………………………………………. 1

14      FRCP Rule 7.1 ……………………………………………………. 3, 5

15  **Northern District Of California Local Rules**

16      LR 7-9(b)(3) ………………………………………………………….. i, 1

17      LR 7-9(c) ……………………………………………………………... i

18  **Cal Business and Professions Code**

19      §17000, et seq……………………………………………………….. 13

20

21

22

23

24

25

26

27

28

iii

1
2

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

3

     Plaintiff respectfully seeks Court leave to file a Motion For Reconsideration (attached),

4

pursuant to Rule 59(e), and LR 7-9(b)(2) and (3). The bases for leave and motion follow.

5

**I.**    **MOTION IS NECESSARY TO PREVENT MANIFEST INJUSTICE (Arg #1):**

6

● 12/22/2018, the Court Issued An Unprecedented & Unsound "*Saturday*" Judgment.

7

● Two days later, 12/24/2018, Defendant Spacey Used The Judgment to Intimidate And

8

   Further Abuse His Sexual Assault Victim(s), In A Cryptic Youtube Video.

9

● Spacey's 12/24/2018 Video Remarks Create The Impression That The Court's

10

   Saturday Judgment Was Timed And Coordinated to Benefit Spacey's Criminal Case.

11

● The Fact That Defendant Ari Emanuel is President Donald Trump's Talent Agent

12

   Undermines The Validity And Prudence Of The Judgment/Order.

13

● The Order Uses No Argument Made In The Def's **13** Attorneys' **3** Motions To Dismiss

14

        In this suit, with potentially over $1 billion at stake, **Saturday**, Dec 22, 2018,

15

the Court entered its Judgment/Order against the Plaintiff.  According to FRCP Rule 6 (and

16

other FRCP Rules) Saturdays and Sundays are considered **legal holidays**. Beyond the

17

questionable appearance of issuing the Judgment/Order on a Saturday; beyond the fact that the

18

Saturday issuance unfairly impacted the Plaintiff (who was therefore delayed in receiving the

19

Order); beyond the Order's legal and factual problems, the timing of the Judgment permits the

20

unsettling suggestion that the Order was timed to assist Defendant Kevin Spacey's criminal

21

case, and gives the unnerving appearance that the Judgment was a *quid pro quo* to Defendant

22

Ari Emanuel (who represents President Donald Trump), for future appellate consideration.

23

     On Christmas Eve, only 48 hours after the Court issued its unexpectedly brief Saturday

24

Judgment, Defendant (**Def**) Spacey released a now notorious Youtube video, uniformly

25

described as *bizarre* throughout the news media. (**See Exhibit A**, an article concerning

26

Spacey's video from ***Forbes Magazine***).  Pleased and excited with the Court's ruling, Spacey

27

concludes this video by growling, "<u>**If I didn't pay the price for the things we both know I**</u>

28

<u>**did do, I'm certainly not going to pay the price for the things I didn't do**</u>."

**In plain sight, Spacey used this Court's Saturday Judgment to send a thuggish message to the alleged victim in his criminal sexual assault case, pending in Nantucket, Massachusetts.** One comes to this conclusion when one considers the known facts of this case concerning Spacey. These facts are:

1. Spacey created the Trigger Street social network (**TS**) in 2002, (@ TriggerStreet.com);.

2. November 2014, Spacey destroyed TS (to destroy evidence against the Defendants);

3. Spacey lured members to TS by claiming TS was intended solely for use in the USA;

4. Yet Spacey travelled to England (2002) and Spain (2009) to recruit new TS members;

5. In Spain (2009), Spacey boasted TS had over 400,000 members _around the world_.

These fact confirm Plaintiff's claim of _Breach of Contract_ and _Infringement_. Yet, against these damning facts, the Court's Order cleared Spacey of all charges. Thus, the subtext of Spacey's video message to his victim was: **_If the Court lacked the will to make him (Spacey) pay on these civil causes, with overwhelming evidence of guilt, then no criminal court would make him pay for the murkier charges that plague sexual assault cases._**

Again, in plain sight, Def Spacey used the Court's eleventh hour, Saturday Judgment, intent to intimidate and bully his victim(s) into withdrawing criminal charges against the actor.

The Court's Saturday Judgment has the unfortunate appearance of being timed to assist Spacey's criminal case, because if the judgment had come later, Spacey could not have sent his video message to his victim(s), as his criminal arraignment was scheduled for January 7, 2019.

But most troubling, the Judgment is manifestly unjust and ill-advised due to the unique relationship that central Defendant Ari Emanuel has with President Donald Trump (Emanuel is Trump's personal talent agent, and the man who blocked any further viewing of Def NBCU's notorious _Access Hollywood_ tapes). Because of this relationship, this ruling threatens to undermine the credibility of The Court. Currently, there are six judicial vacancies on the 9th Circuit, each can only be filled by Presidential appointment. Thus, if after this ruling, the honorable Judge Chhabria were to receive an appellate appointment, many might see this ruling as the improper _quid pro quo_. Where strong and direct connections exist between a litigant and a sitting US President, the Court should deny dispositive motions.

## II.     MANIFEST FAILURE TO CONSIDER MATERIAL FACTS OR DISPOSITIVE ARGUMENTS PRESENTED TO THE COURT (Arg #2):

- Nine days Before The Scheduled 12/13/2018 Motion & ICMC Hearing, Plaintiff Moved For Default Judgments Against Spacey, Damon, Affleck, Blomkamp & Brunetti, For Refusing/Failing To Respond To Summons. Plaintiff Also Repeatedly Informed The Court That Spacey Was In Hiding—To Avoid Service Of Summons.
- The Court Consistently Failed To Act On Plaintiff's Dispositive Motions.
- The Court Should Have Defaulted Defs, Long Before Hearing Motions To Dismiss;
- 48 hours After The Court's Judgment, Spacey Came Out Of Hiding —In A $6 Million Baltimore House, Secretly Purchased In The Name Of A Trust.
- Plaintiff Also Moved The Court To Strike Trigger Street Productions' (**TSP**) Motion To Dismiss, As It Lacked A Corporate Disclosure (Required Upon First Filing Under FRCP Rule 7.1); The Court Inexplicably Opted Not To Strike And Default TSP.

December 24, 2018, when Spacey released his notorious Youtube video just before his arraignment for sexual assault charges, some observers believed Spacey was attempting to win back public support, to lever his popularity to keep the Massachusetts court from requiring the star to attend his own arraignment. But the Massachusetts court was unlikely to allow Spacey to skip the arraignment when his whereabouts were still uncertain. Spacey had not been seen in over a year, since October 29, 2017—the day actor Anthony Rapp accused Spacey of sexually assaulting Rapp, when Rapp was only 14 years old.  Soon many other young men came forward with similar accusations. Spacey immediately entered a rehab program. Two weeks later, behind the walls of a rehab center, would be the last public sighting of Spacey. (**See Exhibit B**, from **DailyMail.com**, Nov 17 2018). The article explains:

> Nothing has been seen or heard of the double Oscar-winning actor since the first allegations emerged over a year ago in October 2017.
> On both sides of the Atlantic, where Spacey owns multi-million-pound homes, the question is being asked with growing urgency: where is Kevin Spacey? 'He's become a total recluse,' one friend told The Mail on Sunday.
> 'No one has heard from him. He's vanished. It's almost unbelievable that someone of his stature can pull it off in a world where everyone has a cell phone.'...

1       ...His downfall began on October 29, 2017, when Star Trek actor Anthony
2    Rapp accused Spacey of sexually assaulting him in the star's New York
apartment in 1986 when Rapp was just 14...

3       ...But unlike Weinstein – who has been photographed going about his daily
business, visiting his lawyers' offices and picking his children up from school –
4    there has been no sign of Spacey anywhere...

5       ...Spacey's vanishing act may be his best coup de théâtre so far...

       ....The last known pictures of the actor are fuzzy paparazzi shots taken at the
6    £25,000-a-month rehab facility in November last year.

7       There, Spacey was supposed to undergo a 45-day sex addiction 'detox'
    but, we can reveal, checked out after only 21 days.

8

9       While Defendant Spacey was in rehab, on November 13, 2017, the Plaintiff quietly

10  filed a lawsuit against Spacey and the other Defendants (referred to as *Briggs v Universal et al*,

11  2017). This lawsuit (which later became this suit, *Briggs v Spacey*, 2018) is the reason Spacey

12  remained out of sight.

13       In response to the Plaintiff's suit, the Defendants' strategy was simple: Hide Spacey, so

14  the Plaintiff could not serve him, then the lawsuit would be dismissed.  The strategy worked.

15  In the Spring of 2018, wherever the Plaintiff tried to serve Spacey, his agents and lawyers

16  refused to accept service.  The Plaintiff informed the Court that Spacey was hiding and had

17  revoked his attorneys' and agents' authority to accept service. The Court took no action. Thus,

18  *Briggs v Universal* was dismissed, without prejudice, April 25, 2018.

19       Since the Court dismissed *Briggs v Universal* <u>without prejudice</u>, Spacey's attorney's

20  guessed the Plaintiff would likely re-file the case. Thus, Spacey remained out-of-sight.

21       The Plaintiff re-filed his case on August 15, 2018; now titled ***Briggs v Spacey, et al***.

22       This time, just as before, Spacey remained in hiding.  But through detailed declarations

23  from his process servers, the Plaintiff methodically informed the Court of the strange and

24  sometimes threatening antics Defendants Emanuel, Damon, Affleck and Blomkamp's agents

25  employed to avoid service.  But none of the agents were more evasive or bizarre than

26  Defendant Spacey's and Brunetti's agents: Frank Selvaggi, and *Altman, Greenfield & Selvaggi*.

27       As the Plaintiff's servers' reports mounted, the Court took no action; exposing the

28  process server(s) to increasing risk. Then, after three attempts to default Spacey through the

1  Court Clerk (for failure to respond), Plaintiff submitted two **Service of Process Status**

2  **Reports** and a **Request for Judicial Notice**, hoping the Court might finally act.  But the Court

3  did nothing, and the Defendants' agents' antics continued.

4       Dec 4, 2018, after Spacey's agent returned the Plaintiff's service documents (by mail)

5  marked "**Refused**" (a defaultable infraction), Plaintiff submitted a Motion for Default

6  Judgment against Spacey, and also moved to default Defendants Matt Damon, Ben Affleck,

7  Neill Blomkamp and Dana Brunetti for failure to respond. All of the motions were proper, with

8  all supporting papers.  The Defendants should have been defaulted.  The Court took no action.

9       However, almost three weeks later, **Saturday**, December 22, 2018, the Court granted

10  the Defendants' three (3) motions to dismiss—despite the Plaintiff defeating every argument in

11  each motion. Oddly, the brief Order omitted the Plaintiff's central claims, and offered no

12  discussion of the motion points or opposition counterpoints: simply an arbitrary ruling.

13       **Two days after the Court's Judgment**, after more than a year in hiding, **Spacey**

14  **emerged back in the public spotlight**, with a bizarre Youtube video, expertly designed to

15  both rally his fans to support his return to his role in *House of Cards*, and to intimidate his

16  sexual assault victims.  With *Briggs v Spacey* dismissed, so eager was Spacey to get back in the

17  spotlight that a week later, on New Year's Eve, Spacey went out and personally purchased and

18  delivered pizza to the paparazzi stationed outside of his home.

19       In light of the many failings with the Court's Saturday Judgment/Order, it should also

20  be observed that the Court chose not to act on the Plaintiff's motion to strike TSP's motion to

21  dismiss (based on TSP's failure to attach a corporate disclosure to its motion, as required by

22  Rule 7.1).  TSP submitted its disclosure 11 days late.

23       Finally, the Order arbitrarily declared the Plaintiff's claims *implausible*. But against this

24  opinion, in the Plaintiff's opposition to TSP's motion to dismiss, the Plaintiff attached letters

25  from executives of *LexShares* and *Easy Lawsuit Funds* expressing interest in financing this

26  suit.  Such investment is not made until an analytics team deems that a case has at least a 60%

27  likelihood of prevailing.  This confirms the soundness and plausibility of the Plaintiff's claims.

28       These facts show a manifest Court failure to consider facts and dispositive arguments.

1    **III.      THE  MOTION IS NECESSARY TO CORRECT MANIFEST ERRORS OF**

2    **LAW OR FACT UPON WHICH THE JUDGMENT RESTS (Arg #3):**

3    ● The Court Improperly Omitted Central And Conclusive Facts And Claims.

4    The Court's Order denied the *Breach* and *Infringemen*t claims by omitting and

5    falsely citing TS *Terms* as stating that materials posted on TS "*may be used by [Trigger Street]*

6    *throughout the world in perpetuity for any purpose whatsoever, including, but not limited to,*

7    *reproduction, disclosure, transmission, publication, broadcast, posting and sublicensing.*"

8    But the <u>full</u> clause <u>makes a clear exemption for screenplays</u>. The full clause reads:

9    "**Any material (other than the <u>Material</u> [as defined and more fully addressed in**

10   **the Triggerstreet <u>Screenplay</u> Forum Participation Agreement]) that you**

11   **transmit to us or post anywhere on the Site or through the Services, including,**

      **without limitation, the Shorts**, may be used by TSCI throughout the world in

12   perpetuity for any purpose whatsoever, including, but not limited to, reproduction..."

13   The Court's Order also omitted and grossly misstated the Plaintiff's *Breach* and

14   *Infringement* claims.  On page 2 of the Complaint the Plaintiff wrote:

15   "TS's Terms Of Use stated the site was solely for use in the USA, yet, in fact, the
      site operated around the world. Further, secretly and without consent from U.S.

16   members, <u>Defs **Spacey and Brunetti went to London** (2002), and **Spain** (2009)</u>

17   <u>to recruit new members, touting TS's "400,000 *members around the world*.</u>""

18   The Complaint included claims and news reports of Spacey's travels to Spain and

19   England to recruit new TS members, in violation of *Terms*. But the Order omits this, to opine:

20   "Briggs cites to the section titled "International Use" as a promise on the
      website's behalf to not make the site available to people outside the

21   United States. [citation omitted]. No reasonable reading of that section

22   could give rise to that obligation."

23   In making this statement, the Court improperly posited a verifiably false argument in

24   favor of the Defendants—particularly troubling as this argument was not raised by the

25   Defendants' 13 attorneys.  Worse, the statement reveals the Court did not understand that

26   universal **ccTLD**'s (internet protocols) made it effortless for TS to identify (then restrict or

27   block) foreign accessors.  Worse yet, the Order misconstrues and mischaracterizes Plaintiff's

28   claims and TS's *International Use* clause. The "International Use" clause clearly stated:

1     **International Use**:  "Unless otherwise specified, **the materials on the Site and in the**
2     **Services are presented solely for the purpose of promoting the entertainment,**
    **information, and community resources and services available in, and other uses in,**
3     **the United States of America**." We control and operate the Site and the Services from
    within the **United States**. <u>We make no representation that materials on the Site or the</u>
4     <u>Services are appropriate or available for use in locations outside the **United States**</u>, and
5     accessing them from territories where their contents are illegal is prohibited. <u>Those who</u>
    <u>choose to access the Site from other locations do so on their own initiative</u>…"
6

7         This clause confirms TS was intended solely for **USA** use (**membership**). The clause

8 was intended to assure **US** users of the site's safety; otherwise it is meaningless. **Any jury**

9 would agree the clause <u>prohibits foreign **membership**</u>; yet, the Court states, "No reasonable

10 reading of that section could give rise to that obligation," without explaining what the clause

11 could possibly mean otherwise, or why then the clause exclusively addresses USA use?

12         The Complaint also explained that TS's *Security* clause stated:

13     **Security**: When you submit information via the Site, **your information is**
    **is protected using secure data networks protected by <u>industry standard</u>**
14     **firewall and <u>password protection systems</u>**.

15     But this security clause, like the International Use clause, is omitted from the order.

16 Plaintiff understood that ccTLD protocols made it effortless for TS to identify, then block or

17 restrict foreign accessors, <u>as the screenwriting website InkTip.com did</u> (this is also omitted

18 from the Order).  Plaintiff did not simply take the *International Use* clause "as a promise on

19 the website's behalf to not make the site available to people outside the United States," as the

20 Court opined. Plaintiff is concerned that the Order appears drafted without basic IP knowledge.

21 But **chief** among the Order's many problems is that the following facts cannot be reconciled:

22   1.  TS's terms state TS is solely for use in the US; prohibiting international membership.

23   2.  Spacey and Brunetti travelled overseas to recruit new members.

24       These two facts constitute a willful *Breach*, as the Defendants cannot post a clause

25 restricting international use, then travel to Spain and London to recruit foreign members. These

26 facts also confirm that Defendants willfully exported the Plaintiff's work, then improperly

27 went abroad to recruit foreign members to access the works.  This is Infringing Exportation.

28       This motion is necessary to correct these manifest errors of fact.

**IV.     MOTION IS NECESSARY TO PREVENT MANIFEST INJUSTICE AND ERRORS OF LAW OR FACT UPON WHICH THE JUDGMENT RESTS (Arg #4):**

● The Court's Order Omits And Ignores Any Mention —And All Supporting Facts— Concerning Conspiracy, Fraud, Deceit, Concealment, Negligence and Spoliation.

On Page 2 and 3 of the Complaint, the Plaintiff provided nine (9) bullet-points of his case's most important causes and claims. However, the Court omitted any mention of eight (8) of these central and imperative facts, causes and claims. The Order only mentioned the fourth bullet-point. Consider the following omission examples:

**Item #1**: The first bullet introduced the Willful Spoliation (destruction of evidence) claim. This claim was presented first because of its resounding significance. Under this bullet the Plaintiff explained that six days after *Briggs v Blomkamp* went to appeals, Defendant Spacey destroyed the Trigger Street social network, in a conspiracy to destroy incriminating evidence against Defendants Ari Emanuel and the other MRC and *Briggs v Blomkamp* Defendants —in the event that the 9th Circuit remanded *Briggs v Blomkamp* for trial. But somehow the Court's Order omitted any mention of any aspect of this claim.

**Item #2:** On page 3 of the Complaint, the third bullet addressed the fact that the Defendants deceitfully hired, as their *Expert* Witness in *Briggs v Blomkamp*, Jeff Rovin —a self-confessed "**fixer,**" who went on FOX News (2016) to boast that for 6 years he worked as a *fixer* for President Bill Clinton's administration, where he was paid to write false smear stories. Plaintiff moved to have Rovin's Report *excluded* for fraud. These facts supported Conspiracy, Fraud, Negligence and Willful Suppression. The Order omitted all of these facts.

**Item #3:** The Order fails to give a complete telling of the Breach claim (bullet #2, p 2).

**Item #4:** The <u>first</u> Cause of Action listed on the Complaint's caption page is **Civil Conspiracy**, yet the Judgment omits any mention of this claim.

**Item #5:** The Order also omits any and all mention of Fraud, Concealment, Deceit, Negligence and Gross Negligence, and all such supporting facts.

These omissions are a manifestly unjust, and amount to conceding, but permitting, that the Defendants willfully conspired to destroy evidence and commit Fraud and Negligence.

1    **V.      MOTION IS NECESSARY TO PREVENT MANIFEST INJUSTICE (Arg #5):**

2    ● Plaintiff Defeated All Arguments Raised By In Defendants' **13 Attorneys**' Motions.

3            Using prevailing case law and guidelines, the Plaintiff's oppositions defeated

4    every argument raised in the Defendants' three (3) motions to dismiss.  NBCU's Defense Team

5    was reduced to misrepresenting *discussion* passages as *conclusions*, making unethical leaps of

6    logic, and improperly designating cases (to obfuscate their misrepresentations). MRC's

7    Defense Team's motion was so unsound that they resorted to filing an unqualified and doomed

8    *Vexatious Litigant* motion. TSP's Defense Team neglected to even submit a corporate

9    disclosure (**a disqualifying failure**).  Yet, the Court granted all of their deficient motions, in a

10   Judgment that (1) omitted swaths of facts and claims central to the Plaintiff's case; (2) lacked

11   any presentation or analysis of motion and opposition points and counterpoints.

12           The absolute meritoriousness of the Plaintiff's claims is confirmed by simply

13   observing that the Defense Counsel first responded to the Complaint with <u>a huge team of seven</u>

14   <u>(7) attorneys</u> —but a month later, **the Defense had grown to a staggering and**

15   **unprecedented team of <u>at least thirteen (13) attorneys</u>**.  Any suggestion that Plaintiff's

16   claims are unsound, wilts in the face of these facts.

17           Additional anecdotal evidence of the meritoriousness of the Plaintiff's claims, are:

18   1. Three months after Plaintiff filed this action (*Briggs v Universal*, Nov 2017), which

19        exposed MRC's negligent business practices, the disgraced mega-million dollar

20        company was absorbed into *Valence Media* (under Eldridge Industries), Feb 2018.

21        No new MRC projects have been announced beyond 2018.

22   2. December 13, 2018, (the same day this Court scheduled motion hearings), WME

23        (Defendant Emanuel's premiere corporation) hired its first president (Ari Greenburg),

24        to give the impression the beleaguered Emanuel was removed from daily operations.

25   3. Since the day the Plaintiff filed *Briggs v Universal* (Nov 2017) until two days after

26        *Briggs v Spacey* was dismissed (Saturday, 12/ 22/2018), Defendant Spacey was not

27        seen in public <u>anywhere on the planet</u>.*

28        *A defendant doesn't hide inside, in an unknown location—for over a year—unless a lawsuit has
         extraordinary merit.

**VI.      MOTION IS NECESSARY TO PREVENT MANIFEST INJUSTICE (Arg #6):**

- The Judgment Improperly Ruled (Without Evidentiary Support) That This Suit Is A Relitigation Of *Briggs v Blomkamp*, Against Conclusive Opposing Evidence.

- FRCP Rule 60(b)(1)(2) and (3) Entitle Plaintiffs To Relief From A Previous Judgment, And Authorize Courts To Grant Such Relief And Reconsideration, If The Previous Judgment Involves A Mistake, New Evidence, Or Fraud, As In This Case.

     In his oppositions, Plaintiff showed this action is not a relitigation of *Briggs v Blomkamp* (2013, US Cert Denied, 2018). The 38-page *Briggs v Blomkamp* complaint primarily just compares two contested screenplays. This suit stems from the fact that two years after *Briggs v Blomkamp* went to appeals, the Plaintiff learned the following three (3) facts:

1. Six days after *Briggs v Blomkamp* went to appeals, the Defendants took the extreme action of closing and destroying the TS social network (to destroy evidence).

2. Plaintiff then found multiple news articles documenting Defendant Spacey's travels to foreign countries to recruit new members to TS, in violation of the TS *Terms*.

3. In 2016, the Defendants' expert witness in *Briggs v Blomkamp* went on FOX News to admit he was a professional "*fixer*," paid to write false *smear* stories.

     When there is newly discovered evidence (see above), or evidence that a party prevailed by fraud or a mistake, FRCP Rule 60 allows a party relief from that judgment.  Any mention of *Briggs v Blomkamp* in the Complaint, was not to relitigate, but to provide facts and evidence showing that the Defendants won the previous judgment by Fraud, per Rule 60(b)(3).

     But perhaps the most conclusive evidence that this case is not a relitigation, is the fact that in <u>*Briggs v Universal*</u> (the first filing of this current case, 2017) **this** Court saw virtually the same Complaint, and the same *relitigation* claims in the Defendants' motions to dismiss. But this Court did not opine that the Complaint was a relitigation of *Briggs v Blomkamp*. If the Court believed *then* that this case was a relitigation, it had a duty to stop the suit and save the Defendants' legal fees, and keep an unnecessary suit out of our courts. But the Court did not

     This case is not a *relitigation*.   Rather, per Rule 60, this case is an effort to correct a prior judgment, won by fraud. Thus, this motion is necessary to prevent a  manifest injustice.

VII.      **MOTION IS NECESSARY TO PREVENT MANIFEST INJUSTICE (Arg #7):**

● The Court Took No Action To Ensure A Safe And Reasonable Legal Process When Informed By The Plaintiff And His Process Servers That:

　　1.  The Defendants' Agents Intimidated/Threatened Plaintiff's Process Server;

　　2.  The Defendants Were Taking Extraordinary Measures To Evade Service.

● The Court Ignored And Took No Corrective Action Against The Defendants' Misconduct (Which Included Lying To Court, And Submitting Falsified And Fraudulent Business Statements To The California Secretary Of State).

● In Refusing To Act, The Court Exposed The Plaintiff, His Process Servers, And The State Of California To Continued Risk.

● The Court failed to hold the Plaintiff and Defendants to an even standard;

　　As soon as the Plaintiff's process servers attempted to serve the Defendants, the Defendants and their agents' bizarre, unethical, and intimidating antics began. The Plaintiff and his process servers informed the Court of this conduct, through various filings (e.g., declarations, service of process status reports, request for judicial notice, motions to serve by publication, etc), but the Court took no interest and took no action; thereby, tacitly condoning Defendants Emanuel's and MRC's thuggish culture.

　　By taking no action, the Court fostered a hostile atmosphere, and engendered a double standard—permitting the Defendants to behave hostilely and dishonestly, seemingly assured that the Court would take no action. Conversely, if the Plaintiff had so little character as to behave in kind, he would certainly have faced disciplinary action.

　　Plaintiff *also* informed the Court of the following events (which the Court *also* ignored):

1.  After MRC failed to respond to service, Plaintiff checked MRC's California Secretary of State business entity statements and discovered that MRC (MRC II Distribution Company, LP) was not located in the MRC building at 9665 Wilshire, Los Angeles, as reported in their corporate disclosure and elsewhere. Rather, their headquarters were reported as being in William Morris Endeavor's (WME) headquarters, at 9601 Wilshire, in a room that did not exist (room 610).  At the WME headquarters, one of

1        WME's agents attempted to intimidate the server.

2    2.   Plaintiff reported three newly discovered instances of attorney Michael J Kump

3        willfully submitting fraudulent and falsified documents to the court, in 3 separate

4        corporate disclosure statements for MRC. These statements conflicted with each other,

5        and with their California Secretary Of State business records, as Kump had:

6           a.   declared Media Rights Capital II LP the parent of MRC II Distribution Co, LP;

7           b.   declared MRC II Distribution Company, LP had no parent company;

8           c.   declared a false address for MRC II Distribution Company.

9    3.   <u>After serving Def Emanuel at WME</u>, the Plaintiff's process server attempted to serve

10      MRC at 9665 Wilshire Blvd, Los Angeles. The process server reported there were

11      construction barriers around the MRC building, but he observed no workers. The

12      security guard would not allow the process server into the building, but the server

13      observed office workers entering and exiting, and sitting and eating in benches outside

14      of the building. The guard told the server that MRC had moved to 1800 Century Park

15      East for the duration of the construction project.

16    4.   The process server then attempted to serve MRC at the address on file for Scott Tenley

17      (the agent for service of process listed in MRC's California Secretary of State business

18      entity statement): 1800 Century Park East.  But at this address, the server found no one

19      connected to MRC; no office for Scott Tenley; no one there had heard of Scott Tenley.

20      The office manager said MRC was no longer at that location and directed the process

21      server back to the previous address (9665 Wilshire).

22    5.   The process server attempted to serve Kevin Spacey through his agent, Frank Selvaggi,

23      at the address on Trigger Street Productions' CA Sec of State business entity statement.

24      There, the process server was told that Sevaggi's company (Altman, Greenfield &

25      Selvaggi) moved out 5 years prior, and the office had been vacant ever since (5 years).

26    6.   In a chaotic scene, the Plaintiff's server attempted to serve Spacey at the office of

27      Altman, Greenfield & Selvaggi, at 10960 Wilshire Blvd, Los Angeles. There two of the

28      company's executives squabbled over whether they were authorized to accept service

1    for Spacey, or not.  In the end, they would not accept the documents.

2    7.   MRC's CA State business statements were 10 to 13 years out of date, and falsified.

3    8.   Trigger Street Productions' business statements were 15 years out of date, and falsified.

4    9.   Defs Matt Damon and Ben Affleck's business statements were 13 years out of date.

5            These new facts supported the Complaint's Fraud and Negligence claims,

6    AND created new Fraud and Negligence claims. According to Rule 60, Fraud is a basis for

7    relief from a prior judgment.  The Court's failure to act suggests the Court does not hold

8    corporations and the rich accountable, and exposes all Californians to risk of further injury.

9            These aforementioned failures are a manifestly unjust. Thus, this motion is necessary.

10   **VIII.    MOTION IS NECESSARY TO PREVENT MANIFEST INJUSTICE (Arg #8):**

11   ●   The Court Failed To Inform The Attorney General Of California Of The Defendants'

12       Certifiably Fraudulent, Negligent, And Conspiratorial Civil Infractions.

13           The Plaintiff's Complaint documents (with news articles, etc.) such facts as:

14   1.   Defendants Emanuel and Block were in an illegal business relationships with Sony

15        Pictures' (then) CEO Michael Lynton, as co-owners of Screenbid (in violation of Cal

16        Business and Professions Code §17000, et seq). Thus, the Defendants profited as

17        business owners, AND as secret business subcontractors.

18   2.   The Defendants hired a fixer, Jeff Rovin, to fix the *Briggs v Blomkamp* expert report

19        (this same *fixer* was used by James Cameron in *Moore v Lightstorm Ent.*, (2013)). This

20        required submitting a falsified and fraudulent central document to the Court.

21   3.   Defendants destroyed the TS social network to destroy evidence against themselves.

22   4.   Defendant Ari Emanuel is documented bullying film distribution partners into offering

23        more money for films; when they refuse(d), he takes/took the film(s) to NBCUniversal.

24           Even if the Court denies Plaintiff's personal injury claims, these are very

25   serious offenses, documented in the Complaint—with evidentiary exhibit substantiation. These

26   offenses require legal attention. Yet the Court failed to inform the Attorney General of

27   California—an inaction that exposes all Californians, perhaps all Americans, to continued risk.

28           This is a manifest injustice to the Plaintiff, Californians and all Americans.

1    **IX.    MOTION IS NECESSARY TO PRESENT NEW EVIDENCE (Arg #9):**

2    Plaintiff stated in his *Declaration In Support of Complaint*, Dkt #88, filed 12/17/2018,

3    that he was hopeful to submit an Amended Complaint, because he had recently found Spacey's

4    and Brunetti's **US Patent Application** (granted) for a special email system. Plaintiff attached

5    the patent to his declaration. This patent is for the email system used for the TS social network,

6    and explains it functionality. The patent explains how the TS's email system was able to *mask*

7    (hide) the identity of select ("*whitelisted*") users. *Masked* whitelisted users could then secretly

8    view <u>any</u> of TS's screenplays, freely, without detection. This same patented system also

9    allowed the Defendants to *unmask*—reveal the identity of—any users. This patent confirms

10   key details of the Complaint (page 6-7). If the Defendants have not destroyed the TS servers

11   and files, a computer forensic expert can unmask the masked TS users' activity, and show (as

12   the Plaintiff alleges) that Def Blomkamp accessed his work, as did Def Emanuel. The Plaintiff

13   also predicts such an unmasking will reveal that film director James Cameron also accessed his

14   work. However, currently it appears the Defendants have totally destroyed the TS servers and

15   files, to protect themselves. But one does not destroy a massive social network that is earning

16   millions from sponsors like Budweiser, unless there is very incriminating evidence to hide.

17   This motion is necessary to present this newly discovered evidence (the patent).

18   **Note:**

19   LR 7-9(c) requires that no opposition argument is repeated herein.  Arg #2 is based on

20   7-9(b)(3) **"**manifest failure by the Court to consider material **facts** or dispositive legal

21   **arguments**."  Thus, for Arg #2, by demand, Plaintiff reviewed facts and arguments **not**

22   **considered** by the Court.  Plaintiff also revisited the *relitigation* issue (on page 10), but used

23   all new facts and arguments. Otherwise, no arguments were made from previous oppositions.

24   **CONCLUSION**

25   For all of the foregoing reasons, the Court should grant the Plaintiff leave to file the

26   attached Motion For Reconsideration.

27   Date: January 14, 2019          Signed: /s/ Steve Wilson Briggs

28                                             Steve Wilson Briggs
                                               Plaintiff, In Persona Propria

# Exhibit

# A

6,955 views  |  Dec 28, 2018, 06:07pm

# Why Is That Kevin Spacey Video So Unsettling? It's Not Just What He Says.



**David Alm** Contributor ⓘ

Arts

*I write about film, the arts, and design.*



Let Me Be Frank

In the four days since Kevin Spacey posted that icky video of him, in his character from *House of Cards* Frank Underwood, making what reads as an oblique denial that he sexually assaulted an 18-year-old man on Nantucket in 2016, the video has been viewed more than 8 million times.

Surely, the vast majority of those who've watched the 3-minute video, titled "Let Me Be Frank," have done so much like one might have tuned in to see Ted Bundy's final interview before he was executed, or Martin Shkreli's live webcasts. Not out of fandom, but fascination with the grotesque and the outer limits of ego.

Spacey, who was fired from *House of Cards* last year amid accusations that he had made sexual advances on a 14-year-old boy in 1988, will be arraigned on the new felony charge on January 7th in a Massachusetts court. And, while he makes no direct reference to that charge in the video, the parallels between it and President Underwood's sociopathic behavior allow for plenty of innuendo.

"You wouldn't believe the worst without evidence, would you?" he says, steely eyed, into the camera. "You wouldn't rush to judgements without facts, would you?" A few seconds later, he growls, "If I didn't pay the price for the things we both know I did do, I'm certainly not going to pay the price for the things I didn't do."

The video is remarkable not just for its content, but for its form too, raising the question: Who on Earth would have been complicit in this farce? As they say, let's go to the tape.

For an A-list actor, presumably with access to the best film technicians in Hollywood, Spacey made a video that looks like an undergraduate short. The camera remains in one stationary spot, panning only a handful of times as Spacey moves to and fro cooking dinner in a Santa-clad apron. The faint sounds of a television waft in the background, as if from another room -- not quite loud enough to suggest it was intentional, to invoke domestic veracity, but rather quiet enough that it was likely an oversight. When he exits the frame, at the end of the video, it's easy to imagine him circling around to the back of the camera to push "Stop," and then editing that part out in post.

**YOU MAY ALSO LIKE**

This isn't to suggest that Spacey himself shot the video -- the panning alone would indicate at least one other body in the room -- but whoever he solicited to help him with this bizarre project does not appear to be among the industry's best. Which is fine, of course -- particularly if that person (or persons) is, in fact,

an undergraduate film student. They have to learn somehow, even if they would never list the credit on their resume.

But I'd posit that the video's amateur quality lends considerably to its creepiness. What does a pariah do when he tries, however misguidedly, to be heard? From the evidence, it would appear that he gets someone -- anyone -- to come over and follow a few simple commands while he orates from across the counter. It makes Spacey look that much more desperate and isolated, as well as delusional, paranoid, and grasping. It's reminiscent of another aging man, not unlike Frank Underwood in more ways than one, who resorts to self-publishing every time he feels cornered, stripped of power, disrespected and increasingly irrelevant.

The outer limits of ego appear to be a very lonely place indeed. And yet, when those who reside there beg for us to listen, even long after they've lost any credibility, we still can't help but tune in. And that, more than anything Spacey says in those three minutes, might be the most disquieting message of all.

*I am a Brooklyn-based writer, editor, and professor. I have covered contemporary art and film since the late 1990s, and have taught journalism and film courses at the college level since 2004.*

58,255 views  |  Dec 20, 2018, 11:30am

# Where Are They Now? San Antonio To Graduation: A College Signing Day Story

 **Merone Hailemeskel** Brand Contributor
**Civic Nation** BRANDVOICE

There are moments in your life that you play over and over again. You remember every little detail—how you were feeling, the people surrounding you, the things you heard that struck a chord—and continue to play in your head to this day.

# Exhibit

# B

Feedback   👍 Like 15.6M

Thursday, Jan 10th 2019   5-Day Forecast

# Daily**Mail**
.com

Home | U.K. | News | Sports | U.S. Showbiz | Australia | Femail | Health | Science | Money | Video | Travel | Columnists | DailyMailTV

Latest Headlines | Royal Family | News | World News | Arts | Headlines | Pictures | Most read | Wires | Games | Login

ADVERTISEMENT



AdChoices ▷

EARN UP TO 75,000 MEMBERSHIP REWARDS® POINTS.

AMERICAN EXPRESS BUSINESS

C F FROST REXPORT INC   Member Since 09

AMEX   LEARN MORE

TERMS APPLY

◉ Site ○ Web   Enter your search

ADVERTISEMENT

# How Kevin Spacey vanished off the face of the earth: Shamed star, 59, has not been seen for a YEAR amid claims he's on a Pacific island, in France or wearing disguises

- **Since the allegations emerged nothing has been seen of the Oscar winning actor**
- **In 2017 Star Trek actor Anthony Rapp accused Spacey of sexually assaulting him**
- **Last known pictures of Spacey are fuzzy shots taken at a rehab facility last year**

By CAROLINE GRAHAM FOR THE MAIL ON SUNDAY
**PUBLISHED:** 17:15 EST, 17 November 2018 | **UPDATED:** 20:13 EST, 17 November 2018

**13k**
shares

**348**
View comments

When the new series of US political drama **House Of Cards** was screened earlier this month, it received an unusually lacklustre reception.

The much-acclaimed show, now in its sixth season, had been a cornerstone of **Netflix**'s annual schedule, with tens of millions around the world gripped by the malevolent scheming of its central character, President Frank Underwood, portrayed to eerie perfection by actor **Kevin Spacey**.

But this time, there is a gaping hole – Spacey is missing, his iconic character killed off by uneasy producers and script writers following sexual assault and harassment allegations made against the actor by a string of young men last year.

Like
Daily Mail

+1
Daily Mail

Follow
@DailyMail

Follow
Daily Mail

Follow
@dailymailuk

**Follow**
Daily Mail

The show limps on regardless, with a female president in the form of Frank's equally ruthless wife Claire, icily played by Robin Wright.



Following the sexual assault allegations that emerged against Kevin Spacey in 2017 nothing has been seen or heard of the double Oscar-winning actor. He was last spotted exercising at the Meadows Rehab Centre in Wickenburg, Arizona, last year

But the real drama lies elsewhere. For despite being one of Hollywood's most recognisable stars, Spacey has apparently disappeared off-screen as well as on it.

Nothing has been seen or heard of the double Oscar-winning actor since the first allegations emerged over a year ago in October 2017.

On both sides of the Atlantic, where Spacey owns multi-million-pound homes, the question is being asked with growing urgency: where is Kevin Spacey? 'He's become a total recluse,' one friend told The Mail on Sunday.

'No one has heard from him. He's vanished. It's almost unbelievable that someone of his stature can pull it off in a world where everyone has a cell phone.'

One producer described Spacey as having 'one of the most recognisable faces on the planet' and added: 'I was with him when he walked into a restaurant in Beverly Hills and the whole place applauded.'

It may be a long time before he garners applause again.

FEMAIL TODAY


▶ Amazon CEO Jeff Bezos 'announced split with wife of 25 years because compromising photographs of him with married former TV anchor, 49, were about to made public'


▶ Kendall Jenner strips down while modeling TWO teeny bikinis on Instagram as beau Ben Simmons comments 'come here' on the post


▶ Kate Mara 'is expecting her first child' with husband Jamie Bell... after showing off hint of a baby bump at Golden Globes


▶ Christina El Moussa 'soaks up the last few hours' of her honeymoon to Bora Bora with new husband Ant Anstead
Posted pics online


▶ Teresa Giudice's daughter Gia flips her mom the bird during 18th birthday party ... which included a three-tiered bejeweled cake
Caught on tape

▶ From Roswell and chemtrails to the moon landing and JFK's assassination, the conspiracy theories obsessing Americans
SPONSORED

▶ Southern Charm's Thomas Ravenel now accuses ex Kathryn Dennis of consuming drugs and alcohol while pregnant with their son and daughter

▶ EXCLUSIVE: Kevin Spacey 'aggressively touched a man who was celebrating his 21st birthday with his parents at the same bar the actor groped a teen' claims eyewitness

▶ Oscars to have NO host for the first time in nearly 30 years: Academy announces plan to have a variety of A-list presenters instead of one name

▶ America's lost sweetheart? Ivanka Trump reveals she turned down the chance to star on The Bachelorette in resurfaced 2007

His downfall began on October 29, 2017, when Star Trek actor Anthony Rapp accused Spacey of sexually assaulting him in the star's New York apartment in 1986 when Rapp was just 14, triggering a string of similar complaints.

interview

▶ **Courtney Stodden shares side-by-side image with Khloe Kardashian as she says she's happy to be compared to the 'stunning' star**

ADVERTISEMENT

+4

**As the new series of the US political drama House Of Cards was screened earlier this month there was a gaping hole. President Frank Underwood, portrayed by actor Kevin Spacey was killed off by uneasy producers and script writers following sexual assault and harassment allegations made against the actor last year**

To date, 30 men have made public allegations about the actor. While no formal charges have been filed, police in LA and London are investigating allegations of sexual assault, including rape.

In the UK, there are six active investigations. The Old Vic theatre in London, where Spacey was artistic director for 11 years until 2015, said it had received 20 complaints of inappropriate behaviour during his tenure.

Spacey issued a swift and contrite apology, ended years of rumours about his sexuality by 'coming out' as gay and checked into sex rehab clinic The Meadows in Arizona alongside disgraced Hollywood producer Harvey Weinstein.

But unlike Weinstein – who has been photographed going about his daily business, visiting his lawyers' offices and picking his children up from school – there has been no sign of Spacey anywhere.

The Mail on Sunday has spoken to – or attempted to speak to – dozens of Spacey's friends, colleagues and acquaintances in the UK and the US in an attempt to piece together his movements.

▶ **From the hometown hustler and the local princess to the Godmutha and the South Shore charmer, meet the stars of MTV: Made in Staten Island**
SPONSORED

▶ **EXCLUSIVE: Father of Gigi and Bella Hadid vows to complete Bel Air mega-mansion despite order to tear down illegal third floor amid foreclosure threats**

▶ **Justin Bieber and Hailey Baldwin enjoy casual lunch in West Hollywood after 'pushing back' the date of their wedding**

**Paris Hilton, 37, looks ultra glam in a red semi-sheer gown as she cosies up to model Jordan Barrett, 22, after calling off engagement to ex-fiancé**

Kevin Spacey has apologised over sexual advance claim.

SHARE THIS

MORE VIDEOS








Wedding proposal on freeway was meant to be something…

Eric Trump hosts star-studded foundation event at in Florida




MORE




G'day mate! One Direction show off their Aussie accents

More Black Friday MADNESS captured in Tesco Extra

      0:47 / 1:08       

**SHARE THIS ARTICLE**

**RELATED ARTICLES**

 Final season of House of Cards gets middling reviews as...

 'It brought the #MeToo movement very close to home': Tom...

But it is clear that Spacey's vanishing act may be his best coup de théâtre so far.

The last known pictures of the actor are fuzzy paparazzi shots taken at the £25,000-a-month rehab facility in November last year.

There, Spacey was supposed to undergo a 45-day sex addiction 'detox' but, we can reveal, checked out after only 21 days.

'He left early,' said one friend, on condition of anonymity. 'He only stuck it out for three weeks.'

Where he went after that remains unclear – although there are plenty of associates who claim to know where he is.

One well-connected British socialite who knew Spacey during his Old Vic days insists that he is living in seclusion in the Cook Islands, a string of 15 tiny islands in the middle of the South Pacific.

'He's living as a hermit in the Cook Islands,' she said authoritatively. 'He's keeping his head down until this blows over.'

'He did it for many other people': Jason Isaacs on Anthony Rapp

**Billion dollar makeover! How Jeff and MacKenzie Bezos went from geek to chic as they became one of Silicon Valley's most glamorous couples**

**A museum in DC, a 30,000-acre ranch in Texas, and THREE Manhattan apartments: The massive property portfolio of Jeff Bezos at center of $140B divorce**

**Ryan Phillippe ordered by judge to pay $790 penalty to ex Elsie Hewitt in ongoing $1M assault case**
He missed a deadline to hand over text messages

**Kristen Stewart is casual chic in pink jacket and black leggings as she enjoys a hike with new girlfriend Sara Dinkin**

**Newlywed Miley Cyrus flaunts her gorgeous gams in Miami as singer dons brightly colored blouse over Daisy Dukes**

**Natalie Portman is casual in purple sweater and blue jeans as she steps out in Los Angeles with a friend for breakfast**

ADVERTISEMENT

      0:00 / 0:00       

# Exhibit

# C

Steve Wilson Briggs
4322 Chico Ave.,
Santa Rosa, CA 95407
510 200 3763
snc.steve@gmail.com
PLAINTIFF In Propria Persona

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| STEVE WILSON BRIGGS,<br><br>Plaintiff,<br>vs<br>KEVIN SPACEY;  ARI EMANUEL;<br>MATT DAMON;  BEN AFFLECK, et al;<br>Defendants | Civ No: 18-cv-04952-VC<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR RECONSIDERATION**<br><br>Complaint filed August 15, 2018 |
|---|---|

## NOTICE OF MOTION AND MOTION

ALL PARTIES AND THEIR ATTORNEYS OF RECORD: YOU ARE HEREBY NOTIFIED THAT the Plaintiff hereby moves this Court **for Reconsideration** of the Court's December 22, 2018 Order/Judgment granting the Defendants' motions to dismiss (Dkt # 90 & 91). This motion is based on this Notice and Motion, the subsequent Memorandum of Points and Authorities.

This motion is made pursuant to Rule 59(e), invokable in cases like this, when: **1.** necessary to prevent manifest injustice; **2.** necessary to correct manifest errors of law or fact upon which the judgment rests, or; **3.** necessary to present newly discovered evidence. This motion is also made pursuant to Local Rules (**LR**) 7-9(2), which allows such motion with "The emergence of new material facts…"; and pursuant to LR 7-9(b)(3), which permits such motions when  there is a "manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court…"

i

1
2

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION: …………………………………………… i

TABLE OF CONTENTS…………………………………………………………... ii

TABLE OF AUTHORITIES …………………………………………...…… iii

MEMORANDUM OF POINTS AND AUTHORITIES: …………………………..... 1

   I.   Motion Is Necessary To Prevent Manifest Injustice (Arg #1): ……………...…… 1

   II.   Manifest Failure To Consider Material Facts Or Dispositive:

       Arguments Which Were Presented To The Court (Arg #2): …………..…….. 3

   III.   The  Motion Is Necessary To Correct Manifest Errors Of Law

       Or Fact Upon Which The Judgment Rests (Arg #3): …………….…..….. 6

   IV.  Motion Is Necessary To Prevent Manifest Injustice And Errors

       Of Law Or Fact Upon Which The Judgment Rests (Arg #4): …………..….. 8

   V.   Motion Is Necessary To Prevent Manifest Injustice (Arg #5): …..……….…… 9

   VI.   Motion Is Necessary To Prevent Manifest Injustice (Arg #6): ………...…….. 10

   VII.  Motion Is Necessary To Prevent Manifest Injustice (Arg #7): ………….…... 11

   VIII. Motion Is Necessary To Prevent Manifest Injustice (Arg #8)............................ 13

   IX.   Motion Is Necessary To Present New Evidence (Arg #9): ……...…………... 14

   Note: ……………………………………………………………..…. 14

CONCLUSION: …………………………………………….……………..…. 14

MOTION FOR RECONSIDERATION

# TABLE OF AUTHORITIES

**CASES:**

*Briggs v Blomkamp* (2013) …………………………………………..…… 8, 10

*Briggs v Universal* (2017) ……………………………………………..…… 4, 9, 10

*Briggs v Spacey* (2018) …………………………………………………….... 4, 5, 9

*Moore v Lightstorm Ent.*, (2013).................................................................. 13

**STATUTES:**

**Federal Rules of Civil Procedure (FRCP)**

FRCP Rule 59(e) …………………………………………………………… i, 1

FRCP Rule 60((b)(1)(2) or (3)) …………………………………………… i, 1, 9, 13

FRCP Rule 6 …………………………………………………………………… 1

FRCP Rule 7.1 ………………………………………………………………… 3, 5

**Northern District Of California Local Rules**

LR 7-9(b)(3) …………………………………………………………………… i, 1

LR 7-9(c) …………………………………………………………………….... i

**Cal Business and Professions Code**

§17000, et seq.…………………………………………………………….. 13

iii

**MEMORANDUM OF POINTS AND AUTHORITIES**

Plaintiff respectfully submits this Motion For Reconsideration, pursuant to Rule 59(e), and LR 7-9(b)(2) and (3). The bases for leave and motion follow.

**I.     MOTION IS NECESSARY TO PREVENT MANIFEST INJUSTICE (Arg #1):**

- 12/22/2018, the Court Issued An Unprecedented & Unsound "*Saturday*" Judgment.
- Two days later, 12/24/2018, Defendant Spacey Used The Judgment to Intimidate And Further Abuse His Sexual Assault Victim(s), In A Cryptic Youtube Video.
- Spacey's 12/24/2018 Video Remarks Create The Impression That The Court's Saturday Judgment Was Timed And Coordinated to Benefit Spacey's Criminal Case.
- The Fact That Defendant Ari Emanuel is President Donald Trump's Talent Agent Undermines The Validity And Prudence Of The Judgment/Order.
- The Order Uses No Argument Made In The Def's **13** Attorneys' **3** Motions To Dismiss

In this suit, with potentially over $1 billion at stake, **Saturday**, Dec 22, 2018, the Court entered its Judgment/Order against the Plaintiff.  According to FRCP Rule 6 (and other FRCP Rules) Saturdays and Sundays are considered **legal holidays**. Beyond the questionable appearance of issuing the Judgment/Order on a Saturday; beyond the fact that the Saturday issuance unfairly impacted the Plaintiff (who was therefore delayed in receiving the Order); beyond the Order's legal and factual problems, the timing of the Judgment permits the unsettling suggestion that the Order was timed to assist Defendant Kevin Spacey's criminal case, and gives the unnerving appearance that the Judgment was a *quid pro quo* to Defendant Ari Emanuel (who represents President Donald Trump), for future appellate consideration.

On Christmas Eve, only 48 hours after the Court issued its unexpectedly brief Saturday Judgment, Defendant (**Def**) Spacey released a now notorious Youtube video, uniformly described as *bizarre* throughout the news media. (**See Exhibit A**, an article concerning Spacey's video from ***Forbes Magazine***).  Pleased and excited with the Court's ruling, Spacey concludes the video by growling, "**If I didn't pay the price for the things we both know I did do,** I'm certainly not going to pay the price for the things I didn't do."

1       **In plain sight, Spacey used this Court's Saturday Judgment to send a thuggish**

2 **message to the alleged victim in his criminal sexual assault case, pending in Nantucket,**

3 **Massachusetts.** One comes to this conclusion when one considers the known facts of this case

4 concerning Spacey. These facts are:

5     1.  Spacey created the Trigger Street social network (**TS**) in 2002, (@ TriggerStreet.com);.

6     2.  November 2014, Spacey destroyed TS (to destroy evidence against the Defendants);

7     3.  Spacey lured members to TS by claiming TS was intended solely for use in the USA;

8     4.  Yet Spacey travelled to England (2002) and Spain (2009) to recruit new TS members;

9     5.  In Spain (2009), Spacey boasted TS had over 400,000 members *around the world*.

10       These fact confirm Plaintiff's claim of *Breach of Contract* and *Infringement*.

11 Yet, against these damning facts, the Court's Order cleared Spacey of all charges. Thus, the

12 subtext of Spacey's video message to his victim was: ***If the Court lacked the will to make him***

13 ***(Spacey) pay on these civil causes, with overwhelming evidence of guilt, then no criminal***

14 ***court would make him pay for the murkier charges that plague sexual assault cases.***

15       Again, in plain sight, Def Spacey used the Court's eleventh hour, Saturday Judgment,

16 intent to intimidate and bully his victim(s) into withdrawing criminal charges against the actor.

17       The Court's Saturday Judgment has the unfortunate appearance of being timed to assist

18 Spacey's criminal case, because if the judgment had come later, Spacey could not have sent his

19 video message to his victim(s), as his criminal arraignment was scheduled for January 7, 2019.

20       But most troubling, the Judgment is manifestly unjust and ill-advised due to the unique

21 relationship that central Defendant Ari Emanuel has with President Donald Trump (Emanuel is

22 Trump's personal talent agent, and the man who blocked any further viewing of Def NBCU's

23 notorious *Access Hollywood* tapes). Because of this relationship, this ruling threatens to

24 undermine the credibility of The Court. Currently, there are six judicial vacancies on the 9th

25 Circuit, each can only be filled by Presidential appointment. Thus, if after this ruling, the

26 honorable Judge Chhabria were to receive an appellate appointment, many might see this

27 ruling as the improper *quid pro quo*.  Where strong and direct connections exist between a

28 litigant and a sitting US President, the Court should deny dispositive motions.

## II.     MANIFEST FAILURE TO CONSIDER MATERIAL FACTS OR DISPOSITIVE ARGUMENTS PRESENTED TO THE COURT (Arg #2):

- Nine days Before The Scheduled 12/13/2018 Motion & ICMC Hearing, Plaintiff Moved For Default Judgments Against Spacey, Damon, Affleck, Blomkamp & Brunetti, For Refusing/Failing To Respond To Summons. Plaintiff Also Repeatedly Informed The Court That Spacey Was In Hiding—To Avoid Service Of Summons.

- The Court Consistently Failed To Act On Plaintiff's Dispositive Motions.

- The Court Should Have Defaulted Defs, Long Before Hearing Motions To Dismiss;

- 48 hours After The Court's Judgment, Spacey Came Out Of Hiding —In A $6 Million Baltimore House, Secretly Purchased In The Name Of A Trust.

- Plaintiff Also Moved The Court To Strike Trigger Street Productions' (**TSP**) Motion To Dismiss, As It Lacked A Corporate Disclosure (Required Upon First Filing Under FRCP Rule 7.1); The Court Inexplicably Opted Not To Strike And Default TSP.

December 24, 2018, when Spacey released his notorious Youtube video just before his arraignment for sexual assault charges, some observers believed Spacey was attempting to win back public support, to lever his popularity to keep the Massachusetts court from requiring the star to attend his own arraignment. But the Massachusetts court was unlikely to allow Spacey to skip the arraignment when his whereabouts were still uncertain. Spacey had not been seen in over a year, since October 29, 2017—the day actor Anthony Rapp accused Spacey of sexually assaulting Rapp, when Rapp was only 14 years old.  Soon many other young men came forward with similar accusations. Spacey immediately entered a rehab program. Two weeks later, behind the walls of a rehab center, would be the last public sighting of Spacey. (**See Exhibit B**, from **DailyMail.com**, Nov 17 2018). The article explains:

> Nothing has been seen or heard of the double Oscar-winning actor since the first allegations emerged over a year ago in October 2017.
> On both sides of the Atlantic, where Spacey owns multi-million-pound homes, the question is being asked with growing urgency: where is Kevin Spacey? 'He's become a total recluse,' one friend told The Mail on Sunday.
> 'No one has heard from him. He's vanished. It's almost unbelievable that someone of his stature can pull it off in a world where everyone has a cell phone.'...

1   ...His downfall began on October 29, 2017, when Star Trek actor Anthony
2   Rapp accused Spacey of sexually assaulting him in the star's New York
    apartment in 1986 when Rapp was just 14...
3   ...But unlike Weinstein – who has been photographed going about his daily
    business, visiting his lawyers' offices and picking his children up from school –
4   there has been no sign of Spacey anywhere...
5   ...Spacey's vanishing act may be his best coup de théâtre so far...
    ....The last known pictures of the actor are fuzzy paparazzi shots taken at the
6   £25,000-a-month rehab facility in November last year.
7   There, Spacey was supposed to undergo a 45-day sex addiction 'detox'
    but, we can reveal, checked out after only 21 days.
8

9   While Defendant Spacey was in rehab, on November 13, 2017, the Plaintiff quietly

10  filed a lawsuit against Spacey and the other Defendants (referred to as *Briggs v Universal et al*,

11  2017). This lawsuit (which later became this suit, *Briggs v Spacey*, 2018) is the reason Spacey

12  remained out of sight.

13  In response to the Plaintiff's suit, the Defendants' strategy was simple: Hide Spacey, so

14  the Plaintiff could not serve him, then the lawsuit would be dismissed.  The strategy worked.

15  In the Spring of 2018, wherever the Plaintiff tried to serve Spacey, his agents and lawyers

16  refused to accept service.  The Plaintiff informed the Court that Spacey was hiding and had

17  revoked his attorneys' and agents' authority to accept service. The Court took no action. Thus,

18  *Briggs v Universal* was dismissed, without prejudice, April 25, 2018.

19  Since the Court dismissed *Briggs v Universal* <u>without prejudice</u>, Spacey's attorney's

20  guessed the Plaintiff would likely re-file the case. Thus, Spacey remained out-of-sight.

21  The Plaintiff re-filed his case on August 15, 2018; now titled **Briggs v Spacey, et al**.

22  This time, just as before, Spacey remained in hiding.  But through detailed declarations

23  from his process servers, the Plaintiff methodically informed the Court of the strange and

24  sometimes threatening antics Defendants Emanuel, Damon, Affleck and Blomkamp's agents

25  employed to avoid service.  But none of the agents were more evasive or bizarre than

26  Defendant Spacey's and Brunetti's agents: Frank Selvaggi, and *Altman, Greenfield & Selvaggi*.

27  As the Plaintiff's servers' reports mounted, the Court took no action; exposing the

28  process server(s) to increasing risk. Then, after three attempts to default Spacey through the

1   Court Clerk (for failure to respond), Plaintiff submitted two **Service of Process Status**
2   **Reports** and a **Request for Judicial Notice**, hoping the Court might finally act.  But the Court
3   did nothing, and the Defendants' agents' strange antics continued.

4   Dec 4, 2018, after Spacey's agent returned the Plaintiff's service documents (by mail)
5   marked "**Refused**" (a defaultable infraction), Plaintiff submitted a Motion for Default
6   Judgment against Spacey, and also moved to default Defendants Matt Damon, Ben Affleck,
7   Neill Blomkamp and Dana Brunetti for failure to respond. All of the motions were proper, with
8   all supporting papers.  The Defendants should have been defaulted.  The Court took no action.

9   However, almost three weeks later, **Saturday**, December 22, 2018, the Court granted
10  the Defendants' three (3) motions to dismiss—despite the Plaintiff defeating every argument in
11  each motion. Oddly, the brief Order omitted the Plaintiff's central claims, and offered no
12  discussion of the motion points or opposition counterpoints: simply an arbitrary ruling.

13  **Two days after the Court's Judgment**, after more than a year in hiding, **Spacey**
14  **emerged back in the public spotlight**, with a bizarre Youtube video, expertly designed to
15  both rally his fans to support his return to his role in *House of Cards*, and to intimidate his
16  sexual assault victims.  With *Briggs v Spacey* dismissed, so eager was Spacey to get back in the
17  spotlight that a week later, on New Year's Eve, Spacey went out and personally purchased and
18  delivered pizza to the paparazzi stationed outside of his home.

19  In light of the many failings with the Court's Saturday Judgment/Order, it should also
20  be observed that the Court chose **not** to act on the Plaintiff's motion to strike TSP's motion to
21  dismiss (based on TSP's failure to attach a corporate disclosure to its motion, as required by
22  Rule 7.1).  TSP submitted its disclosure 11 days late.

23  Finally, the Order arbitrarily declared the Plaintiff's claims *implausible*. But against this
24  opinion, in the Plaintiff's opposition to TSP's motion to dismiss, the Plaintiff attached letters
25  from executives of *LexShares* and *Easy Lawsuit Funds* expressing interest in financing this
26  suit.  Such investment is not made until an analytics team deems that a case has at least a 60%
27  likelihood of prevailing.  This confirms the soundness and plausibility of the Plaintiff's claims.

28  These facts show a manifest Court failure to consider facts and dispositive arguments.

1   **III.   THE MOTION IS NECESSARY TO CORRECT MANIFEST ERRORS OF**

2   **LAW OR FACT UPON WHICH THE JUDGMENT RESTS (Arg #3):**

3   ●  The Court Improperly Omitted Essential, Conclusive And Central Facts And Claims.

4       The Court's Order denied the *Breach* and *Infringemen*t claims by omitting and

5 falsely citing TS *Terms* as stating that materials posted on TS "*may be used by [Trigger Street]*

6 *throughout the world in perpetuity for any purpose whatsoever, including, but not limited to,*

7 *reproduction, disclosure, transmission, publication, broadcast, posting and sublicensing.*"

8       But the <u>full</u> clause <u>makes a clear exemption for screenplays</u>. The full clause reads:

9     "**Any material (other than the <u>Material</u> [as defined and more fully addressed in**

10     **the Triggerstreet <u>Screenplay</u> Forum Participation Agreement]) that you**

    **transmit to us or post anywhere on the Site or through the Services, including,**

11     **without limitation, the Shorts,** may be used by TSCI throughout the world in

12     perpetuity for any purpose whatsoever, including, but not limited to, reproduction..."

13       The Court's Order also omitted and grossly misstated the Plaintiff's *Breach* and

14 *Infringement* claims.  On page 2 of the Complaint the Plaintiff wrote:

15     "TS's Terms Of Use stated the site was solely for use in the USA, yet, in fact, the

16     site operated around the world. Further, secretly and without consent from U.S.

    members, <u>Defs **Spacey and Brunetti went to London** (2002), and **Spain (2009)**</u>

17     <u>to recruit new members, touting TS's "400,000 *members around the world*."</u>"

18       The Complaint included claims and news reports of Spacey's travels to Spain and

19 England to recruit new TS members, in violation of *Terms*. But the Order omits this, to opine:

20     "Briggs cites to the section titled "International Use" as a promise on the

21     website's behalf to not make the site available to people outside the

    United States. [citation omitted]. No reasonable reading of that section

22     could give rise to that obligation."

23       In making this statement, the Court improperly posited a verifiably false argument in

24 favor of the Defendants—particularly troubling as this argument was not raised by the

25 Defendants' 13 attorneys.  Worse, the statement reveals the Court did not understand that

26 universal **ccTLD**'s (internet protocols) made it effortless for TS to identify (then restrict or

27 block) foreign accessors.  Worse yet, the Order misconstrues and mischaracterizes Plaintiff's

28 claims and TS's *International Use* clause. The "International Use" clause clearly stated:

1  **International Use**:  "Unless otherwise specified, **the materials on the Site and in the**
2  **Services are presented solely for the purpose of promoting the entertainment,**
   **information, and community resources and services available in, and other uses in,**
3  **the United States of America**."  We control and operate the Site and the Services from
   within the **United States**. <u>We make no representation that materials on the Site or the</u>
4  <u>Services are appropriate or available for use in locations outside the **United States**</u>, and
   accessing them from territories where their contents are illegal is prohibited. <u>Those who</u>
5  <u>choose to access the Site from other locations do so on their own initiative</u>…"
6

7        This clause confirms TS was intended solely for **USA** use (**membership**). The clause

8  was intended to assure **US** users of the site's safety; otherwise it is meaningless. **Any jury**

9  would agree the clause <u>prohibits foreign **membership**</u>; yet, the Court states, "No reasonable

10  reading of that section could give rise to that obligation," without explaining what the clause

11  could possibly mean otherwise, or why then the clause exclusively addresses USA use?

12        The Complaint also explained that TS's *Security* clause stated:

13        **Security**: When you submit information via the Site, **your information is**
          **is protected using secure data networks protected by <u>industry standard</u>**
14        **firewall and <u>password protection systems</u>**.

15        But this security clause, like the International Use clause, is omitted from the order.

16  Plaintiff understood that ccTLD protocols made it effortless for TS to identify, then block or

17  restrict foreign accessors, <u>as the screenwriting website InkTip.com did</u> (this is also omitted

18  from the Order).  Plaintiff did not simply take the *International Use* clause "as a promise on

19  the website's behalf to not make the site available to people outside the United States," as the

20  Court opined. Plaintiff is concerned that the Order appears drafted without basic IP knowledge.

21  But **chief** among the Order's many problems is that the following facts cannot be reconciled:

22    1.  TS's terms state TS is solely for use in the US; prohibiting international membership.

23    2.  Spacey and Brunetti travelled overseas to recruit new members.

24        These two facts constitute a willful *Breach*, as the Defendants cannot post a clause

25  restricting international use, then travel to Spain and London to recruit foreign members. These

26  facts also confirm that Defendants willfully exported the Plaintiff's work, then improperly

27  went abroad to recruit foreign members to access the works.  This is Infringing Exportation.

28        This motion is necessary to correct these manifest errors of fact.

**IV.     MOTION IS NECESSARY TO PREVENT MANIFEST INJUSTICE AND**

**ERRORS OF LAW OR FACT UPON WHICH THE JUDGMENT RESTS (Arg #4):**

● The Court's Order Omits And Ignores Any Mention —And All Supporting Facts— Concerning Conspiracy, Fraud, Deceit, Concealment, Negligence and Spoliation.

On Page 2 and 3 of the Complaint, the Plaintiff provided nine (9) bullet-points of his case's most important causes and claims. However, the Court omitted any mention of eight (8) of these central and imperative facts, causes and claims. The Order only mentioned the fourth bullet-point. Consider the following omission examples:

**Item #1**: The first bullet introduced the Willful Spoliation (destruction of evidence) claim. This claim was presented first because of its resounding significance.  Under this bullet the Plaintiff explained that six days after *Briggs v Blomkamp* went to appeals, Defendant Spacey destroyed the Trigger Street social network, in a conspiracy to destroy incriminating evidence against Defendants Ari Emanuel and the other MRC and *Briggs v Blomkamp* Defendants —in the event that the 9th Circuit remanded *Briggs v Blomkamp* for trial. But somehow the Court's Order omitted any mention of any aspect of this claim.

**Item #2:** On page 3 of the Complaint, the third bullet addressed the fact that the Defendants deceitfully hired, as their *Expert* Witness in *Briggs v Blomkamp*,  Jeff Rovin —a self-confessed "**fixer,**" who went on FOX News (2016) to boast that for 6 years he worked as a *fixer* for President Bill Clinton's administration, where he was paid to write false smear stories. Plaintiff moved to have Rovin's Report *excluded* for fraud. These facts supported Conspiracy, Fraud, Negligence and Willful Suppression.  The Order omitted all of these facts.

**Item #3:** The Order fails to give a complete telling of the Breach claim (bullet #2, p 2).

**Item #4:** The <u>first</u> Cause of Action listed on the Complaint's caption page is **Civil Conspiracy**, yet the Judgment omits any mention of this claim.

**Item #5:** The Order also omits any and all mention of Fraud, Concealment, Deceit, Negligence and Gross Negligence, and all such supporting facts.

These omissions are a manifestly unjust, and amount to conceding, but permitting, that the Defendants willfully conspired to destroy evidence and commit Fraud and Negligence.

1  **V.      MOTION IS NECESSARY TO PREVENT MANIFEST INJUSTICE (Arg #5):**

2  ●   Plaintiff Defeated All Arguments Raised By In Defendants' **13 Attorneys**' Motions.

3            Using prevailing case law and guidelines, the Plaintiff's oppositions defeated

4  every argument raised in the Defendants' three (3) motions to dismiss.  NBCU's Defense Team

5  was reduced to misrepresenting *discussion* passages as *conclusions*, making unethical leaps of

6  logic, and improperly designating cases (to obfuscate their misrepresentations). MRC's

7  Defense Team's motion was so unsound that they resorted to filing an unqualified and doomed

8  *Vexatious Litigant* motion. TSP's Defense Team neglected to even submit a corporate

9  disclosure (**a disqualifying failure**).  Yet, the Court granted all of their deficient motions, in a

10  Judgment that (1) omitted swaths of facts and claims central to the Plaintiff's case; (2) lacked

11  any presentation or analysis of motion and opposition points and counterpoints.

12          The absolute meritoriousness of the Plaintiff's claims is confirmed by simply

13  observing that the Defense Counsel first responded to the Complaint with a huge team of seven

14  (7) attorneys —but a month later, **the Defense had grown to a staggering and**

15  **unprecedented team of at least thirteen (13) attorneys**.  Any suggestion that Plaintiff's

16  claims are unsound, wilts in the face of these facts.

17          Additional anecdotal evidence of the meritoriousness of the Plaintiff's claims, are:

18  1.  Three months after Plaintiff filed this action (*Briggs v Universal*, Nov 2017), which

19       exposed MRC's negligent business practices, the disgraced mega-million dollar

20       company was absorbed into *Valence Media* (under Eldridge Industries), Feb 2018.

21       No new MRC projects have been announced beyond 2018.

22  2.  December 13, 2018, (the same day this Court scheduled motion hearings), WME

23       (Defendant Emanuel's premiere corporation) hired its first president (Ari Greenburg),

24       to give the impression the beleaguered Emanuel was removed from daily operations.

25  3.  Since the day the Plaintiff filed *Briggs v Universal* (Nov 2017) until two days after

26       *Briggs v Spacey* was dismissed (Saturday, 12/ 22/2018), Defendant Spacey was not

27       seen in public anywhere on the planet.*

28       *A defendant doesn't hide inside, in an unknown location—for over a year—unless a lawsuit has
         extraordinary merit.

| 1 | **VI.   MOTION IS NECESSARY TO PREVENT MANIFEST INJUSTICE (Arg #6):** |

2  ● The Judgment Improperly Ruled (Without Evidentiary Support) That This Suit Is A

3  Relitigation Of *Briggs v Blomkamp*, Against Conclusive Opposing Evidence.

4  ● FRCP Rule 60(b)(1)(2) and (3) Entitle Plaintiffs To Relief From A Previous Judgment,

5  And Authorize Courts To Grant Such Relief And Reconsideration, If The Previous

6  Judgment Involves A Mistake, New Evidence, Or Fraud, As In This Case.

7  In his oppositions, Plaintiff showed this action is not a relitigation of *Briggs v*

8  *Blomkamp* (2013, US Cert Denied, 2018). The 38-page *Briggs v Blomkamp* complaint

9  primarily just compares two contested screenplays. This suit stems from the fact that two years

10  after *Briggs v Blomkamp* went to appeals, the Plaintiff learned the following three (3) facts:

11  1. Six days after *Briggs v Blomkamp* went to appeals, the Defendants took the extreme

12  action of closing and destroying the TS social network (to destroy evidence).

13  2. Plaintiff then found multiple news articles documenting Defendant Spacey's travels to

14  foreign countries to recruit new members to TS, in violation of the TS *Terms*.

15  3. In 2016, the Defendants' expert witness in *Briggs v Blomkamp* went on FOX News to

16  admit he was a professional "*fixer*," paid to write false *smear* stories.

17  When there is newly discovered evidence (see above), or evidence that a party

18  prevailed by fraud or a mistake, FRCP Rule 60 allows a party relief from that judgment.  Any

19  mention of *Briggs v Blomkamp* in the Complaint, was not to relitigate, but to provide facts and

20  evidence showing that the Defendants won the previous judgment by Fraud, per Rule 60(b)(3).

21  But perhaps the most conclusive evidence that this case is not a relitigation, is the fact

22  that in <u>*Briggs v Universal*</u> (the first filing of this current case, 2017) **this** Court saw virtually

23  the same Complaint, and the same *relitigation* claims in the Defendants' motions to dismiss.

24  But this Court did not opine that the Complaint was a relitigation of *Briggs v Blomkamp*. If the

25  Court believed *then* that this case was a relitigation, it had a duty to stop the suit and save the

26  Defendants' legal fees, and keep an unnecessary suit out of our courts. But the Court did not

27  This case is not a *relitigation*.  Rather, per Rule 60, this case is an effort to correct a

28  prior judgment, won by fraud. Thus, this motion is necessary to prevent a  manifest injustice.

1  **VII.      MOTION IS NECESSARY TO PREVENT MANIFEST INJUSTICE (Arg #7):**

2  ● The Court Took No Action To Ensure A Safe And Reasonable Legal Process When

3    Informed By The Plaintiff And His Process Servers That:

4    1.   The Defendants' Agents Intimidated/Threatened Plaintiff's Process Server;

5    2.   The Defendants Were Taking Extraordinary Measures To Evade Service.

6  ● The Court Ignored And Took No Corrective Action Against The Defendants'

7    Misconduct (Which Included Lying To Court, And Submitting Falsified And

8    Fraudulent Business Statements To The California Secretary Of State).

9  ● In Refusing To Act, The Court Exposed The Plaintiff, His Process Servers, And The

10   State Of California To Continued Risk.

11 ● The Court failed to hold the Plaintiff and Defendants to an even standard;

12        As soon as the Plaintiff's process servers attempted to serve the Defendants, the

13 Defendants and their agents' bizarre, unethical, and intimidating antics began. The Plaintiff

14 and his process servers informed the Court of this conduct, through various filings (e.g.,

15 declarations, service of process status reports, request for judicial notice, motions to serve by

16 publication, etc), but the Court took no interest and took no action; thereby, tacitly condoning

17 Defendants Emanuel's and MRC's thuggish culture.

18        By taking no action, the Court fostered a hostile atmosphere, and engendered a double

19 standard—permitting the Defendants to behave hostilely and dishonestly, seemingly assured

20 that the Court would take no action. Conversely, if the Plaintiff had so little character as to

21 behave in kind, he would certainly have faced disciplinary action.

22        Plaintiff *also* informed the Court of the following events (which the Court *also* ignored):

23 1.  After MRC failed to respond to service, Plaintiff checked MRC's California Secretary

24     of State business entity statements and discovered that MRC (MRC II Distribution

25     Company, LP) was not located in the MRC building at 9665 Wilshire, Los Angeles, as

26     reported in their corporate disclosure and elsewhere. Rather, their headquarters were

27     reported as being in William Morris Endeavor's (WME) headquarters, at 9601

28     Wilshire, in a room that did not exist (room 610).  At the WME headquarters, one of

1    WME's agents attempted to intimidate the server.

2. Plaintiff reported three newly discovered instances of attorney Michael J Kump willfully submitting fraudulent and falsified documents to the court, in 3 separate corporate disclosure statements for MRC. These statements conflicted with each other, and with their California Secretary Of State business records, as Kump had:

    a.   declared Media Rights Capital II LP the parent of MRC II Distribution Co, LP;

    b.   declared MRC II Distribution Company, LP had no parent company;

    c.   declared a false address for MRC II Distribution Company.

3. After serving Def Emanuel at WME, the Plaintiff's process server attempted to serve MRC at 9665 Wilshire Blvd, Los Angeles. The process server reported there were construction barriers around the MRC building, but he observed no workers. The security guard would not allow the process server into the building, but the server observed office workers entering and exiting, and sitting and eating in benches outside of the building. The guard told the server that MRC had moved to 1800 Century Park East for the duration of the construction project.

4. The process server then attempted to serve MRC at the address on file for Scott Tenley (the agent for service of process listed in MRC's California Secretary of State business entity statement): 1800 Century Park East.  But at this address, the server found no one connected to MRC; no office for Scott Tenley; no one there had heard of Scott Tenley. The office manager said MRC was no longer at that location and directed the process server back to the previous address (9665 Wilshire).

5. The process server attempted to serve Kevin Spacey through his agent, Frank Selvaggi, at the address on Trigger Street Productions' CA Sec of State business entity statement. There, the process server was told that Sevaggi's company (Altman, Greenfield & Selvaggi) moved out 5 years prior, and the office had been vacant ever since (5 years).

6. In a chaotic scene, the Plaintiff's server attempted to serve Spacey at the office of Altman, Greenfield & Selvaggi, at 10960 Wilshire Blvd, Los Angeles. There two of the company's executives squabbled over whether they were authorized to accept service

1    for Spacey, or not.  In the end, they would not accept the documents.

2    7.  MRC's CA State business statements were 10 to 13 years out of date, and falsified.

3    8.  Trigger Street Productions' business statements were 15 years out of date, and falsified.

4    9.  Defs Matt Damon and Ben Affleck's business statements were 13 years out of date.

5    These new facts supported the Complaint's Fraud and Negligence claims, AND created new Fraud and Negligence claims. According to Rule 60, Fraud is a basis for relief from a prior judgment.  The Court's failure to act suggests the Court does not hold corporations and the rich accountable, and exposes all Californians to risk of further injury.

9    These aforementioned failures are a manifestly unjust. Thus, this motion is necessary.

## VIII.    MOTION IS NECESSARY TO PREVENT MANIFEST INJUSTICE (Arg #8):

- The Court Failed To Inform The Attorney General Of California Of The Defendants' Certifiably Fraudulent, Negligent, And Conspiratorial Civil Infractions.

The Plaintiff's Complaint documents (with news articles, etc.) such facts as:

1. Defendants Emanuel and Block were in an illegal business relationships with Sony Pictures' (then) CEO Michael Lynton, as co-owners of Screenbid (in violation of Cal Business and Professions Code §17000, et seq). Thus, the Defendants profited as business owners, AND as secret business subcontractors.

2. The Defendants hired a fixer, Jeff Rovin, to fix the *Briggs v Blomkamp* expert report (this same *fixer* was used by James Cameron in *Moore v Lightstorm Ent.*, (2013)). This required submitting a falsified and fraudulent central document to the Court.

3. Defendants destroyed the TS social network to destroy evidence against themselves.

4. Defendant Ari Emanuel is documented bullying film distribution partners into offering more money for films; when they refuse(d), he takes/took the film(s) to NBCUniversal.

Even if the Court denies Plaintiff's personal injury claims, these are very serious offenses, documented in the Complaint—with evidentiary exhibit substantiation. These offenses require legal attention. Yet the Court failed to inform the Attorney General of California—an inaction that exposes all Californians, perhaps all Americans, to continued risk.

This is a manifest injustice to the Plaintiff, Californians and all Americans.

1      **IX.**    **MOTION IS NECESSARY TO PRESENT NEW EVIDENCE (Arg #9):**

2      Plaintiff stated in his *Declaration In Support of Complaint*, Dkt #88, filed 12/17/2018,

3 that he was hopeful to submit an Amended Complaint, because he had recently found Spacey's

4 and Brunetti's **US Patent Application** (granted) for a special email system. Plaintiff attached

5 the patent to his declaration. This patent is for the email system used for the TS social network,

6 and explains it functionality. The patent explains how the TS's email system was able to *mask*

7 (hide) the identity of select ("*whitelisted*") users. *Masked* whitelisted users could then secretly

8 view <u>any</u> of TS's screenplays, freely, without detection. This same patented system also

9 allowed the Defendants to *unmask*—reveal the identity of—any users. This patent confirms

10 key details of the Complaint (page 6-7). If the Defendants have not destroyed the TS servers

11 and files, a computer forensic expert can unmask the masked TS users' activity, and show (as

12 the Plaintiff alleges) that Def Blomkamp accessed his work, as did Def Emanuel. The Plaintiff

13 also predicts such an unmasking will reveal that film director James Cameron also accessed his

14 work. However, currently it appears the Defendants have totally destroyed the TS servers and

15 files, to protect themselves. <u>But one does not destroy a massive social network that is earning</u>

16 <u>millions from sponsors like Budweiser, unless there is very incriminating evidence to hide</u>.

17      This motion is necessary to present this newly discovered evidence (the patent).

18                                      **Note:**

19      LR 7-9(c) requires that no opposition argument is repeated herein.  Arg #2 is based on

20 7-9(b)(3) **"**manifest failure by the Court to consider material **facts** or dispositive legal

21 **arguments**."  Thus, for Arg #2, by demand, Plaintiff reviewed facts and arguments **not**

22 **considered** by the Court.  Plaintiff also revisited the *relitigation* issue (on page 10), but used

23 all new facts and arguments. Otherwise, no arguments were made from previous oppositions.

24                                   **CONCLUSION**

25      For the foregoing reasons, the Court should grant this Motion For Reconsideration.

26   Date:_ January 14, 2019 _            Signed:_ /s/ Steve Wilson Briggs _

27                                     Steve Wilson Briggs

28                                     Plaintiff, In Persona Propria

MOTION FOR RECONSIDERATION

# Exhibit A

6,955 views  |  Dec 28, 2018, 06:07pm

# Why Is That Kevin Spacey Video So Unsettling? It's Not Just What He Says.



**David Alm** Contributor ⓘ
Arts
*I write about film, the arts, and design.*



Let Me Be Frank

In the four days since Kevin Spacey posted that icky video of him, in his character from *House of Cards* Frank Underwood, making what reads as an oblique denial that he sexually assaulted an 18-year-old man on Nantucket in 2016, the video has been viewed more than 8 million times.

Surely, the vast majority of those who've watched the 3-minute video, titled "Let Me Be Frank," have done so much like one might have tuned in to see Ted Bundy's final interview before he was executed, or Martin Shkreli's live webcasts. Not out of fandom, but fascination with the grotesque and the outer limits of ego.

Spacey, who was fired from *House of Cards* last year amid accusations that he had made sexual advances on a 14-year-old boy in 1988, will be arraigned on the new felony charge on January 7th in a Massachusetts court. And, while he makes no direct reference to that charge in the video, the parallels between it and President Underwood's sociopathic behavior allow for plenty of innuendo.

"You wouldn't believe the worst without evidence, would you?" he says, steely eyed, into the camera. "You wouldn't rush to judgements without facts, would you?" A few seconds later, he growls, "If I didn't pay the price for the things we both know I did do, I'm certainly not going to pay the price for the things I didn't do."

The video is remarkable not just for its content, but for its form too, raising the question: Who on Earth would have been complicit in this farce? As they say, let's go to the tape.

For an A-list actor, presumably with access to the best film technicians in Hollywood, Spacey made a video that looks like an undergraduate short. The camera remains in one stationary spot, panning only a handful of times as Spacey moves to and fro cooking dinner in a Santa-clad apron. The faint sounds of a television waft in the background, as if from another room -- not quite loud enough to suggest it was intentional, to invoke domestic veracity, but rather quiet enough that it was likely an oversight. When he exits the frame, at the end of the video, it's easy to imagine him circling around to the back of the camera to push "Stop," and then editing that part out in post.

## YOU MAY ALSO LIKE

This isn't to suggest that Spacey himself shot the video -- the panning alone would indicate at least one other body in the room -- but whoever he solicited to help him with this bizarre project does not appear to be among the industry's best. Which is fine, of course -- particularly if that person (or persons) is, in fact,

an undergraduate film student. They have to learn somehow, even if they would never list the credit on their resume.

But I'd posit that the video's amateur quality lends considerably to its creepiness. What does a pariah do when he tries, however misguidedly, to be heard? From the evidence, it would appear that he gets someone -- anyone -- to come over and follow a few simple commands while he orates from across the counter. It makes Spacey look that much more desperate and isolated, as well as delusional, paranoid, and grasping. It's reminiscent of another aging man, not unlike Frank Underwood in more ways than one, who resorts to self-publishing every time he feels cornered, stripped of power, disrespected and increasingly irrelevant.

The outer limits of ego appear to be a very lonely place indeed. And yet, when those who reside there beg for us to listen, even long after they've lost any credibility, we still can't help but tune in. And that, more than anything Spacey says in those three minutes, might be the most disquieting message of all.

*I am a Brooklyn-based writer, editor, and professor. I have covered contemporary art and film since the late 1990s, and have taught journalism and film courses at the college level since 2004.*

58,255 views  |  Dec 20, 2018, 11:30am

# Where Are They Now? San Antonio To Graduation: A College Signing Day Story

 **Merone Hailemeskel**  Brand Contributor
**Civic Nation** BRANDVOICE

There are moments in your life that you play over and over again. You remember every little detail—how you were feeling, the people surrounding you, the things you heard that struck a chord—and continue to play in your head to this day.

# Exhibit

# B

Feedback    👍 Like 15.6M

Thursday, Jan 10th 2019    5-Day Forecast



| Home | U.K. | News | Sports | U.S. Showbiz | Australia | Femail | Health | Science | Money | Video | Travel | Columnists | DailyMailTV |

Latest Headlines    Royal Family    News    World News    Arts    Headlines    Pictures    Most read    Wires    Games    Login

ADVERTISEMENT




○ Site ○ Web    Enter your search

ADVERTISEMENT

# How Kevin Spacey vanished off the face of the earth: Shamed star, 59, has not been seen for a YEAR amid claims he's on a Pacific island, in France or wearing disguises

- **Since the allegations emerged nothing has been seen of the Oscar winning actor**
- **In 2017 Star Trek actor Anthony Rapp accused Spacey of sexually assaulting him**
- **Last known pictures of Spacey are fuzzy shots taken at a rehab facility last year**

By CAROLINE GRAHAM FOR THE MAIL ON SUNDAY
**PUBLISHED:** 17:15 EST, 17 November 2018 | **UPDATED:** 20:13 EST, 17 November 2018

**13k**
shares

**348**
View comments

When the new series of US political drama **House Of Cards** was screened earlier this month, it received an unusually lacklustre reception.

The much-acclaimed show, now in its sixth season, had been a cornerstone of **Netflix**'s annual schedule, with tens of millions around the world gripped by the malevolent scheming of its central character, President Frank Underwood, portrayed to eerie perfection by actor **Kevin Spacey**.

But this time, there is a gaping hole – Spacey is missing, his iconic character killed off by uneasy producers and script writers following sexual assault and harassment allegations made against the actor by a string of young men last year.

Like
Daily Mail

+1
Daily Mail

Follow
@DailyMail

Follow
Daily Mail

Follow
@dailymailuk

Follow
Daily Mail

The show limps on regardless, with a female president in the form of Frank's equally ruthless wife Claire, icily played by Robin Wright.



© TT for DailyMail.com                                                      +4

**Following the sexual assault allegations that emerged against Kevin Spacey in 2017 nothing has been seen or heard of the double Oscar-winning actor. He was last spotted exercising at the Meadows Rehab Centre in Wickenburg, Arizona, last year**

But the real drama lies elsewhere. For despite being one of Hollywood's most recognisable stars, Spacey has apparently disappeared off-screen as well as on it.

Nothing has been seen or heard of the double Oscar-winning actor since the first allegations emerged over a year ago in October 2017.

On both sides of the Atlantic, where Spacey owns multi-million-pound homes, the question is being asked with growing urgency: where is Kevin Spacey? 'He's become a total recluse,' one friend told The Mail on Sunday.

'No one has heard from him. He's vanished. It's almost unbelievable that someone of his stature can pull it off in a world where everyone has a cell phone.'

One producer described Spacey as having 'one of the most recognisable faces on the planet' and added: 'I was with him when he walked into a restaurant in Beverly Hills and the whole place applauded.'

It may be a long time before he garners applause again.

**FEMAIL TODAY**


▶ **Amazon CEO Jeff Bezos 'announced split with wife of 25 years because compromising photographs of him with married former TV anchor, 49, were about to made public'**


▶ **Kendall Jenner strips down while modeling TWO teeny bikinis on Instagram as beau Ben Simmons comments 'come here' on the post**


▶ **Kate Mara 'is expecting her first child' with husband Jamie Bell... after showing off hint of a baby bump at Golden Globes**


▶ **Christina El Moussa 'soaks up the last few hours' of her honeymoon to Bora Bora with new husband Ant Anstead**
Posted pics online


▶ **Teresa Giudice's daughter Gia flips her mom the bird during 18th birthday party ... which included a three-tiered bejeweled cake**
Caught on tape

▶ **From Roswell and chemtrails to the moon landing and JFK's assassination, the conspiracy theories obsessing Americans**
SPONSORED

▶ **Southern Charm's Thomas Ravenel now accuses ex Kathryn Dennis of consuming drugs and alcohol while pregnant with their son and daughter**

▶ **EXCLUSIVE: Kevin Spacey 'aggressively touched a man who was celebrating his 21st birthday with his parents at the same bar the actor groped a teen' claims eyewitness**

▶ **Oscars to have NO host for the first time in nearly 30 years: Academy announces plan to have a variety of A-list presenters instead of one name**

▶ **America's lost sweetheart? Ivanka Trump reveals she turned down the chance to star on The Bachelorette in resurfaced 2007**

His downfall began on October 29, 2017, when Star Trek actor Anthony Rapp accused Spacey of sexually assaulting him in the star's New York apartment in 1986 when Rapp was just 14, triggering a string of similar complaints.

+4

**As the new series of the US political drama House Of Cards was screened earlier this month there was a gaping hole. President Frank Underwood, portrayed by actor Kevin Spacey was killed off by uneasy producers and script writers following sexual assault and harassment allegations made against the actor last year**

To date, 30 men have made public allegations about the actor. While no formal charges have been filed, police in LA and London are investigating allegations of sexual assault, including rape.

In the UK, there are six active investigations. The Old Vic theatre in London, where Spacey was artistic director for 11 years until 2015, said it had received 20 complaints of inappropriate behaviour during his tenure.

Spacey issued a swift and contrite apology, ended years of rumours about his sexuality by 'coming out' as gay and checked into sex rehab clinic The Meadows in Arizona alongside disgraced Hollywood producer Harvey Weinstein.

But unlike Weinstein – who has been photographed going about his daily business, visiting his lawyers' offices and picking his children up from school – there has been no sign of Spacey anywhere.

The Mail on Sunday has spoken to – or attempted to speak to – dozens of Spacey's friends, colleagues and acquaintances in the UK and the US in an attempt to piece together his movements.

Kevin Spacey has apologised over sexual advance claim.

SHARE THIS

 



MORE VIDEOS



Wedding proposal on freeway was meant to be something…



Eric Trump hosts star-studded foundation event at in Florida

interview

▶ **Courtney Stodden shares side-by-side image with Khloe Kardashian as she says she's happy to be compared to the 'stunning' star**

ADVERTISEMENT

▶ **From the hometown hustler and the local princess to the Godmutha and the South Shore charmer, meet the stars of MTV: Made in Staten Island**
SPONSORED

▶ **EXCLUSIVE: Father of Gigi and Bella Hadid vows to complete Bel Air mega-mansion despite order to tear down illegal third floor amid foreclosure threats**

▶ **Justin Bieber and Hailey Baldwin enjoy casual lunch in West Hollywood after 'pushing back' the date of their wedding**

**Paris Hilton, 37, looks ultra glam in a red semi-sheer gown as she cosies up to model Jordan Barrett, 22, after calling off engagement to ex-fiancé**

MORE





G'day mate! One Direction show off their Aussie accents

More Black Friday MADNESS captured in Tesco Extra

0:47 / 1:08

## SHARE THIS ARTICLE

## RELATED ARTICLES



Final season of House of Cards gets middling reviews as...



'It brought the #MeToo movement very close to home': Tom...

But it is clear that Spacey's vanishing act may be his best coup de théâtre so far.

The last known pictures of the actor are fuzzy paparazzi shots taken at the £25,000-a-month rehab facility in November last year.

There, Spacey was supposed to undergo a 45-day sex addiction 'detox' but, we can reveal, checked out after only 21 days.

'He left early,' said one friend, on condition of anonymity. 'He only stuck it out for three weeks.'

Where he went after that remains unclear – although there are plenty of associates who claim to know where he is.

One well-connected British socialite who knew Spacey during his Old Vic days insists that he is living in seclusion in the Cook Islands, a string of 15 tiny islands in the middle of the South Pacific.

'He's living as a hermit in the Cook Islands,' she said authoritatively. 'He's keeping his head down until this blows over.'

'He did it for many other people': Jason Isaacs on Anthony Rapp

▶ Billion dollar makeover! How Jeff and MacKenzie Bezos went from geek to chic as they became one of Silicon Valley's most glamorous couples

▶ A museum in DC, a 30,000-acre ranch in Texas, and THREE Manhattan apartments: The massive property portfolio of Jeff Bezos at center of $140B divorce

▶ Ryan Phillippe ordered by judge to pay $790 penalty to ex Elsie Hewitt in ongoing $1M assault case
He missed a deadline to hand over text messages

▶ Kristen Stewart is casual chic in pink jacket and black leggings as she enjoys a hike with new girlfriend Sara Dinkin

▶ Newlywed Miley Cyrus flaunts her gorgeous gams in Miami as singer dons brightly colored blouse over Daisy Dukes

▶ Natalie Portman is casual in purple sweater and blue jeans as she steps out in Los Angeles with a friend for breakfast

ADVERTISEMENT

0:00 / 0:00